[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 269 
Evidence was received, upon the trial of this action, to show by extrinsic circumstances that the building destroyed by fire was the same referred to and intended to be insured by the policy of insurance described in the complaint. The admissibility of this evidence, under the defendant's objection, and the instructions in reference to it, given to the jury by the court, also under the defendant's exception, are the questions which arise upon this appeal.
The identity of the premises intended to be covered by the policy was rendered in some degree uncertain by the introduction of two letters of the alphabet into that instrument, which, as the defendant insisted, in connection with the words which immediately followed, showed that the insured premises had not been destroyed or otherwise injured by fire. The policy insured the plaintiffs "against loss or damage by fire to the amount of $3000: on their three and a half story brick building, slate roof, coped, occupied as a patent cordage manufactory, situate No. West corner of First and South Eighth streets, Williamsburgh, L.I., $1000; on their main shafting and fixtures contained therein, $1000; on their lignum vitæ in the cellar of said building, $1000." The evidence showed that, at the time of effecting the insurance, the plaintiffs were the owners of two brick buildings on the opposite corners of South Eighth and First streets, one of which was occupied as a patent cordage factory, and contained main shafting and fixtures, with a cellar underneath which was used by the plaintiffs for storing large quantities of lignum vitæ. *Page 270 
The other building was occupied as a block factory, and not as a cordage factory, with what is called a basement, under it, and no cellar. Both buildings were on the westerly corners of South Eighth and First streets, the block factory being on the northwesterly and the cordage factory on the southwesterly corner. This was the character of the proof submitted to the jury, under the defendant's objection, for the purpose of showing that the building at the southwesterly corner was the building intended to be insured by the parties to the policy of insurance. The defendant claimed that the two letters No., immediately preceding the words "west corner of First and South Eighth streets," should be read north, which would leave no doubt that the building occupied as the block factory was the building designed to be insured. On the other hand, if these two letters were omitted in the policy, it would be equally apparent that the building on the southwest corner of the streets was designed to be insured, because that was occupied as a patent cordage factory, and had a cellar underneath, which corresponded with the description in the policy. The policy itself seems plain enough; the ambiguity arises in consequence of the extrinsic fact that there are two west corners of First and South Eighth streets, of the same height, and alike, except the cellar, belonging to the plaintiffs. This is what I understand by a latent ambiguity raised by extrinsic evidence, and which the writers upon the law of evidence say may be explained in the same manner. The example given in 1 Phillips on Evidence, 531, is illustrative of the rule: "Thus, if a person grant his manor of S. to one and his heirs, so far there appears to be no ambiguity; but if it should be proved that the grantor has the manors both of south S. and north S., this ambiguity is matter in fact, and parole evidence may be admitted to show which of the two manors the party intended to convey." See also the cases referred to in Cowen Hill's Notes (part 2 p. 1376, note *Page 271 
942). These authorities are ample, in favor of the admissibility of the evidence of extrinsic facts, to show which of the buildings was intended to be covered by the policy.
There are several difficulties in the way of the defendant's construction of the policy of insurance. The alphabetical letters No. do not signify north. They are evidently an abbreviation, designed to signify something not fully expressed. They are not an abbreviation of the word north, for no instance has been referred to in which they have been so used. If the letter N. was there alone, it might have the signification claimed, because, in conveyances, maps, charts and other instruments, the letter N. is commonly used as an abbreviation for the word north. But when this letter is found in connection with and preceding the letter O, it signifies the word number and nothing else. Buildings in cities are designated by their numbers, and are so referred to in instruments of conveyance and policies of insurance, and this circumstance sufficiently accounts for the presence of these letters in the policy, without attributing to them a new and unusual signification. If, however, the word north were to be substituted for the letters No., it is not by any means clear that the subsequent descriptions in the policy would not control their effect. Where there is a discrepancy in the different parts of a description, the more clearly defined and important must control those obscurely expressed and less important. Thus, to quote from the note in Cowen Hill to which I have referred: "If a deed call for land lying in the county of C, describing it by courses, distances and monuments, and it turns out that the land lies in another county, that part of the description may be rejected and the rest take effect." (Boardman v. Reed'sLessees, 6 Peters, 344, 5; Barclay v. Howell's Lessee,id., 511; Stringer v. Young's Lessee, 3 id., 320, 344.) When the premises are described by a number, and their monuments, courses and distances were given, it appearing that at the time the grantor owned no lot of that number, but owned another *Page 272 
lot falling exactly within other parts of the description; held, that the number in the description should be rejected as falsademonstratio, and effect given to the residue. (Jackson v.Loomis, 18 John., 81; S.C., 19 id., 449; Lush v.Druse, 4 Wend., 313; Jackson v. Marsh, 6 Cow., 281; 1Greenl. Ev., §§ 285-288, c.) The written or printed application for the insurance made to the defendant, together with the entry in the book of the witness Samuel S. Parsons, who made the application, and his answer to the question, "upon what building he applied to the defendant for insurance," was evidence of the same character, and properly admissible to explain the ambiguity and apply the policy to the subject matter. The proof showed that the building destroyed was a cordage factory; that it had a cellar underneath, in which there was stored large quantities of lignum vitæ, and in all essential particulars it answered the description called for by the policy, which the building on the northwest corner of the street did not. These various circumstances were referred to and commented upon by the court, in the instructions given to the jury, as extrinsic facts, from which they might determine whether the building destroyed by fire was that intended to be insured by the parties to the policy. I am unable to see any error in the admission of the evidence.
I think, nevertheless, that there must be a new trial, for misdirection of the judge at the circuit upon the point suggested in the opinion of Judge JOHNSON.