By the Court, Robertson, Ch. J.
The defendants claim that the expression in the policy “ consigned to H. Cohn & Co. by regular invoice and bill of lading,” demands the insertion of the names of that firm in such bill of lading as consignees, iu order thereby to cover any shipments. They contend that the object of such provision was to protect them against the risk of loss of premiums or shipments, which might arrive safely, by concealing the fact that they had been covered by such open policy ; inasmuch as under it, so construed, the assured could not avail himself of parol proof, to bring a particular shipment in case of loss, within its terms ; and that without the insertion of the words “ and shipped ” before “ by regular invoice,” or some equivalent ones, no different interpretation can be given to it. The main argument to sustain this position is, that such words must .have been inserted for some further purpose than merely to require invoices and bills of lading to accompany the goods, since they are universally sent; and that *305 such purpose could only he that contended for; that the persons to whom the consignment was made in the hills of lading, was material to the discovery of risks assumed and premiums earned, and the mention of their names in the bill of lading, was the main object to be attained.
But the facility of concealment of risks covered by the policy; and evading liability for premiums therefor, by shipping gold in a third person’s name,- if so great an evil and so vital to insurers, should have been guarded against by an express and unambiguous stipulation, in language intelligible to both parties. Was such the case here ? The language of the clause in question is “ consigned to H. Cohn by regular invoice and bill of lading.” The preposition used is “ by,” not “ in,” and the invoice is to consign the gold, as well as the bill of lading. “ Consigned ” is by no means a word of such technical import as to be confined in its scope to the operation of a bill of lading. (Burrill’s Law Dict, in verb.) Cl By,” as much signifies “ by means of,” as “ by the language of.” In is a much more appropriate word to express the latter ; indeed both are generally found coupled together in conveyances, where reference is made therein to the language of the instrument as well as its effect. Goods, to whose possession a person is entitled by an assignment or indorsement of a bill of lading of them, are as much consigned to him thereby, as if he were named in the' bill, (Zachrisson v. Ahman, 2 Sandf. 68,) and no technical force can be given to the word consigned, as applied to an invoice. It follows that such phrase cannot be subjected to so rigorous a construction as to . require “ Cohn & Co.” to be designated in a bill of lading and invoice of gold as consignees, in order to bring them within the terms of such policy ; so long as it is equally susceptible of a more liberal one, without departing from the meaning of the words employed. The construction now contended for, if adopted for the reason urged therefor, would extend to the exclusion of parol evidence to prove a mistake in a bill of lading, which is admissible in other cases, (Lee v. Salter, Hill & *306 Den. 163,) since otherwise the underwriter would be equally baffled in ascertaining what premiums he had earned.
It is moreover not to be overlooked as insignificant, that the contested phrase precedes, and does not follow, the description of the kind of subject of insurance, and is connected with the name of the shipper, the party insured, and the consignee, and must have been intended to carry out a kindred purpose. The making of a contract of insurance depends frequently on the character of the parties insured, and sometimes on that of those who represent them; the names of the owners and shippers were, therefore, inserted for the purpose of protection ; the name of the consignee was simply for the purpose of identification ; and the requirement of regular invoices and bills of lading was evidently in contrast with irregular lists, ship’s receipts, or other modes of contracting for the transportation of the metal, .and also to determine that it was originally destined for New York.
But even if such phrase composed part of the description of the subject insured, if the main characteristics are observed, slight deviations in unimportant or contradictory particulars, may be overlooked. (Ruan v. Gardner, 1 Wash. C. C. 149, 150. Burr v. Broadway Insurance Co., 16 N. Y. Rep. 267.)
It is by no means clear that the memorandum of the gold forwarded to Cohn & Co., expressing it to be shipped by the plaintiffs, to be delivered to H. Cohn & Co., and signed by the shippers in San Francisco, (Newstadter Bros.,) who received the same jointly with other amounts, and took a more formal bill of lading of the whole, was not equivalent to a new bill of lading, or at least an assignment pro tanto of such bill to Cohn & Co., as in case of an expressman carrying parcels, (Stoddard v. L. I. R. R. Co., 5 Sandf. 180; N. J. St. Nav. Co. v. Merch. Bk., 6 How. U. S. 344;) since in such cases there appears to be a privity of obligation between the common carrier and the party whose goods are carried. It seems also to contain enough of the elements of a bill of lading to constitute one. (Dows v. Greene, 24 N. Y. Rep. 638.) This *307 derives still more force from the fact of the existence of the custom to ship parcels of gold belonging to different persons, when under a certain amount in value, jointly, in the name of one person. The defendants were chargeable with knowledge of such custom, and the language of the contract was to be construed in reference to it. (Astor v. Union Ins. Co., 7 Cowen, 202. Dana v. Fiedler, 12 N. Y. Rep. 40.) The risk' taken was but for $12,000, below the standard, and they were therefore bound to know that the bill of lading might be taken in other names, though for the benefit of the plaintiffs. The latter are not to be presumed to have intended to forego the advantage of such mode of shipping, without clear expression showing it. And the forwarding of such memorandum by the common agent of all the parties who shipped in the name of one person, was the best mode of separating and indicating the interest of each in such common bill of lading.
The effect' of the conversation between the clerk of the consignees, and the president-of the defendants, upon the exhibition by the former to the latter of the telegram of the shipment, depends somewhat upon the question whether the policy attached, • and continued to be attached, without notice of the risk ? It would be a matter of serious doubt, whether the note in the margin of the policy prevented it from attaching until notice of the risk, and the omission to notify would hardly detach it, if it once attached. It seems to follow, therefore, that unless a new and binding agreement was made at the time of the notification, varying the terms of the original agreement, the rights of the parties must be determined by that alone. It is true, it is possible that if the plaintiffs could have done anything at that time to repair any defect in the documents, the defendants might have been estopped from denying that the risk announced, came within the policy, after accepting it, but it was too late for any change in that respect. The admission, however, of the president of the defendants, that a variation of the names of the persons by whom, or to whom, or in whose names, such goods were *308 shipped, is valuable as showing that the danger of losing premiums, by concealing risks, was not considered by him, at least, as the evil intended to be provided against in this case by the contested clause.
The judgment should, therefore, be affirmed with costs.