## Case No. 2,198.

**BURRILL v. BOSTON.**

[2 Cliff. 590.] [1]

Circuit Court, D. Massachusetts. May Term, 1867.

MUNICIPAL CORPORATIONS—TAXATION FOR PUBLIC DEFENSE—POWERS—CONTRACTS OF AGENTS.

1. Towns in Massachusetts have no power in their corporate capacity to raise money to provide for the public defence, to pay bounties to enlisted or drafted men, unless by express delegation of such power to them by and from the legislature of the state.

2. Acts of the legislature of Massachusetts, authorizing towns to raise money to procure their quotas of volunteers in the late war of the Rebellion, did not empower them to assess and collect taxes to defray the expenses of obtaining credits upon their quotas, of residents previously enlisted but not enrolled and accredited to such towns.

3. The mayor of a city in Massachusetts made a contract with a certain person to pay him a certain sum per man for every credit upon the volunteer quota of the city which he could obtain from those residents enlisted into the service of the United States prior to May 31, 1864, and not credited to the city. *Held*, that the mayor, as agent of the city council, if acting with their assent, had power to bind the corporation to the fulfilment of the contract, provided the corporation had power under their charter and the acts of the state legislature to enter into it, but that the act of the state legislature of March 18, 1864, and a subsequent act, limited the appropriation of the money raised by a city under them, to the purpose of obtaining its proportion of volunteers in the United States military service, under certain orders of the presi-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

dent in said acts specified, and that they did not delegate an authority to raise money to pay the expense of having previously enlisted men credited upon such city's quota.

4. *Held*, therefore, that the plaintiff was not entitled to maintain an action against the city upon such contract, inasmuch as the corporation had no authority to incur such an obligation.

At law. This was an action of assumpsit upon the following contract, made between the plaintiff [Charles Burrill] and F. W. Lincoln, Jr., as mayor of the city of Boston: "In consideration that Charles Burrill, of Brookline, Mass., shall obtain credits upon the quota of the city of Boston, I hereby agree to pay to the said Charles Burrill the sum of one hundred and twenty-five dollars per man, for each and every full man so credited upon said quota, the money to be paid to the said Burrill whenever he presents to me the official certificate from the proper authority, showing that such credits have been given. F. W. Lincoln, Jr., Mayor. May 31, 1864." The credits referred to were of such residents of the city of Boston as had enlisted into the service of the United States during the late Rebellion, but had not been enrolled and credited to the quota of the city prior to February 24, 1864. The plaintiff was to obtain these credits under the provision of section 8 of the act of July 4, 1864. Plaintiff claimed to have obtained credits for six thousand five hundred and twenty-nine men. At the close of the plaintiff's case, the defendants moved the court for instructions that the plaintiff had not made out his case, and was not entitled to maintain his action.

B. F. Butler, Henry W. Paine, Benjamin Deane, and William Gaston, for plaintiff.

B. R. Curtis, J. G. Abbott, and J. P. Healey, for defendants.

CLIFFORD, Circuit Justice. When the plaintiff's case is closed it is competent for the defendant to present such a prayer for instruction, and he has a right to have the matter determined by the court. Such is the settled practice of the court, and experience has confirmed its justice and convenience. The theory of the motion is, that the plaintiff is not entitled to recover in any view of the evidence, and it is never granted unless such is the opinion of the court. Plaintiff is required to introduce the whole of his evidence in support of his declaration before the defendant is required to state his defence, and if the plaintiff is not entitled to recover in any view of his evidence, it is useless to proceed further in the case. Questions of law must be determined by the court, and as a general rule they can be as understandingly determined at that stage of the trial as at any later period. The present request is founded upon certain objections to the right of the plaintiff to maintain the suit, which it is supposed cannot be overcome. Reference will first be made to the objec-

tions taken to the right to maintain the suit upon the special counts. They are all drawn upon the written contract signed by the mayor, and which reads as follows: (Here the court recited the above agreement.)

The substance of the declaration is, that the defendants by that writing did promise, undertake, and agree to and with the plaintiff, that if he, the plaintiff, would obtain credits upon the quota of the city, they would pay him $125 for each and every full man so credited upon said quota whenever he should present to the mayor official certificates that such credits had been given. The plaintiff also alleges that on the 5th of September, 1864, he obtained credits on the said quota of six thousand five hundred and twenty-nine full men, and that he did on the same day present the required certificates to the mayor. He accordingly claims the sum specified in the declaration, and alleges that the defendants have refused to pay as they promised. The first objection made by the defendants is, that the promise in the writing declared on, having been made by the mayor, the action cannot be maintained against the defendant corporation, but we are not able to concur in that view of the law. On the contrary, we hold that the action is well brought, if the mayor, in executing the instrument, acted as the agent of the city council, and the defendants had power under their charter or the laws of the state to enter into the contract. Ford v. Williams, 21 How. [62 U. S.] 287; Higgins v. Senior, 8 Mees. & W. 834; 1 Pars. Cont. (5th Ed.) 52. It is obvious that the mayor could not make such a contract in behalf of the city without the assent of the city council; and it is equally clear that the assent of the city council, if given, would be without any legal efficacy, unless the corporation possessed the power to contract such a pecuniary obligation. The great question, therefore, is the question of power, and it is the one first to be considered, because if it be determined against the plaintiff it is unnecessary to inquire whether the mayor did or did not act by the assent of the city council. The argument for the plaintiff is that the city council, even if they did not previously assent to the contract, subsequently ratified the act of the mayor in executing it; but, if the corporation possessed no power to incur such a pecuniary obligation, the city council could not effectually ratify it. The supreme court of the state decided half a century ago that towns were restricted in their powers of raising money and causing it to be assessed and collected "to the cases of providing for the poor, for schools, for the support of public worship, and other necessary charges;" that they had no lawful right and authority in their corporate capacity to raise money and cause it to be assessed upon the polls and estates within the town for the purpose of paying additional wages to drafted or enlist-

ed men, or for any other expenditure for defence. The correctness of that decision is not now questioned, and it could not well be, as it has been sanctioned by a series of subsequent decisions coming down to the present time. They were cited at the argument, and need not be reproduced, as, when properly understood, they are all to the same effect. The express decision in the leading case is, that it is not the corporate duty of the town to provide for defence in time of war, because that obligation is devolved upon the government, state or national. Twenty years later the same court held that that test was a decisive one against all grants of money liable to that objection. Allen v. Inhabitants of Taunton, 19 Pick. 485. The same rule prevails in Maine, New Hampshire, and Connecticut, as appears by decisions of very recent date. The settled rule in all the states referred to is, that it is no part of the corporate duty of towns, as such, to provide for public defence or to raise money to pay bounties or additional wages to volunteers or drafted men, and that they have no authority so to do unless by an express delegation of power to them for that purpose from the legislature. Barker v. Dixmont, 53 Me. 576; Alley v. Edgecomb, Id. 446. These decisions go further, and decide that the adoption of town boundaries as convenient limits of the sub-districts in raising the quota of the state, imposed no new duties upon the municipal corporations which were created for other special purposes. Repeated decisions of the supreme court of the United States have also laid down the rule that municipal corporations derive all their powers from the source of their creation, which is the legislature. Undoubtedly the legislature may authorize towns to raise money and apply it for such purposes, and it may be that subsequent legislation can ratify and confirm the doings of towns in incurring such expenses not previously authorized by law. These remarks make it unnecessary to refer to the provisions of the charter of the defendants, as it is perfectly clear that there is nothing in those provisions to take the case out of the general rule established by the decisions of the state court. Special reference is made by the plaintiff to two acts of the state legislature, as conferring the power to make the contract described in the declaration. Before examining those enactments, however, it will be useful to ascertain more definitely the true construction of the contract. Credits upon quotas are required, and not volunteers or recruits, as is obvious throughout the contract. The plaintiff does not bind himself to procure one "credit" or one volunteer or recruit, but the mayor promises to pay $125 per man for each and every full man credited upon the quota of the city, if obtained by the plaintiff. No time is fixed for its fulfilment. In terms it is not a contract for a year, nor for three years, nor during the war, but if it be held to extend beyond the then impending draft, is indefinite as to time of fulfilment, number to be obtained, and duration. Applied to the subject-matter, it is not doubted that the word "credit" would include recruits or enlistments, but the contract could afford no assurance that the deficiencies in the several wards would be supplied from that source. The second section of the act of congress of the 24th of February, 1864 [13 Stat. 6], required that the number of men who had before entered the naval service, and whose names were borne on the enrolment list already returned to the provost marshal, should be taken into account in ascertaining and filling the quotas described in the first sections of the act. But there was no provision in any act of congress, at the date of the contract, authorizing any such credits on quotas as were subsequently obtained by the plaintiff in this case.

The eighth section of the act of the 4th of July, 1864, [13 Stat. 380,] provided: "And be it further enacted, that all persons in the naval service of the United States who have entered said service during the present Rebellion, who have not been credited to the quota of any town, district, ward, or state, by reason of their being in said service, and not enrolled prior to February 24, 1864, shall be enrolled and credited to the quotas of the town, ward, district, or state in which they respectively reside, upon satisfactory proof of their residence made to the secretary of war."

Satisfactory proof of residence was required by that act to be made to the secretary of war, and he accordingly referred the list prepared by the plaintiff to the commission mentioned in the evidence, as a means of complying with that provision. Recruits might have been obtained at any time after the date of the contract, but the plaintiff did not obtain any, and it is clear the contract did not require anything but credits. Sufficient has been remarked to show the general characteristics of the contract, and to prepare the way for the inquiry, whether either of the acts of the legislature referred to afford any support to the theory that the contract was one which it was competent for the defendants to make or ratify. Money raised by a city under the act of the 18th of March, 1864, was required to be applied, under the direction of the mayor and aldermen or city council, in aid of, and for the purpose of procuring its proportion of the quota of volunteers in the military service called for from the commonwealth, under certain orders of the president therein specified. Certain quotas of volunteers in the military service had been called for from the commonwealth, and the purpose of the act was to authorize any town or city to raise money to procure their proportion of said quotas of volunteers. Doubt cannot be entertained upon that subject, but if it could be, it must certainly be removed by reading the proviso,

which limits the amount authorized to be raised to $125 for each volunteer enlisted in said service after the passage of the act. Supp. Gen. St. p. 253. The second act of the legislature of the State referred to is to the same effect, except that it extends the authority to any order or call of the president issued after March 1, 1864, and before March 1, 1865, but the declared purpose of the act is the same, and the limitation is the same as in the prior act. The plain purpose of both acts was to procure volunteers, and not to óbtain credits, as prescribed in the contract. Suffice it to ·say, without pursuing the argument, that those provisions, in our opinion, afford no support to the theory of the plaintiff. Our conclusion is that the defendants had no power to make the contract mentioned in the declaration; that they possess no power to assess and collect taxes for any such purpose, and consequently that the plaintiff cannot recover upon the special counts. Suppose that to be so, still, it is insisted by the plaintiff that he is entitled to recover a reasonable compensation for his labor and expenses under the common counts. Every suggestion upon that subject was listened to with attention, and has been carefully considered. Willing to be convinced, it was the purpose of the court to invite discussion ·upon the point, that no argument in support of the proposition might be overlooked. Some of the arguments are very ingenious, but they have failed to convince. Want of power to assess and collect the money to discharge the obligation, is the ·obstacle in the way of maintaining the suit on the express contract, and the same difficulty stands in the way of an action founded on an implied promise. Indebitatus assumpsit is founded upon what the law terms an implied promise on the part of the defendant to pay what in good conscience he is bound to pay to the plaintiff. Where the case shows that it is the duty of the defendant to pay, the law imputes to him a promise to fulfil that obligation. Such a promise is always charged in the declaration, and must be so charged in order that the action may be maintained. But the law never implies a promise to pay unless some duty creates such an obligation, and more especially it never implies a promise to do an act contrary to duty or contrary to law. Curtis v. Fiedler, 2 Black [67 U. S.] 478; Cary v. Curtis, 3 How. [44 U. S.] 236. Assumpsit may be maintained against· a municipal corporation in certain cases upon an implied promise, but the better opinion is that a promise to pay can never be implied in a case where the corporation possesses no power to contract. Unable to perceive that the plaintiff can recover in any view of the case, it becomes the duty of the court to give the instruction as prayed by the defendants. Verdict must be for the defendants, and the form of the verdict will be prepared accordingly.