# City Court.

*Trial Term—March*, 1887.

## HERBERT G. TORREY *against* THE BALEN AGRICULTURAL AND MINING CO.

Contract for services respecting mining lands.    Performance. The express stipulations of a contract, where the manner and details are essential, must be complied with. The difficulty or improbability of accomplishing an undertaking will not excuse performance.

Trial by the court without a jury.

The defendant was interested in the ownership of 24,711 acres of land situated in the Province of Veragua, in the State of Panama, in the Republic of Columbia; which was supposed to contain gold and other precious metals in their original condition. The purpose of the defendant, as indicated by its name, was to use the land for agricultural and mining purposes.

In order to satisfy the promoters of the scheme that the purpose of the corporation was feasible, the plaintiff, an assayer and mining expert, was employed to go down and examine the land and report the result of his investigations. The contract provides that the plaintiff shall, on or before February 15, 1884, proceed to the property of the company, and for the use of the company do the following things :

*First.* Make as thorough and minute examination and survey of such property as may be necessary for the purpose of discovering and locating such mines, veins and deposits of minerals as may exist thereon, having special reference, however, to gold and silver ; and giving attention first to such mines, veins or deposits of gold and

silver as are already known to exist upon said property or that shall be pointed out to him.

*Second.* Prepare and deliver to the said company a written description of the situation of the property in general, its topography, with the nature, value, character, opportunity for development, and the precise locality of any mines, veins and deposits of gold, silver and other minerals, with assay of same, and the means of access and of transportation to and from such localities, with suitable maps and diagrams to enable the company readily to find such mines, veins and deposits.

*Third.* Establish suitable monuments and place suitable marks upon such mines, veins and deposits, and designate the same on such maps and diagrams so as to enable the company readily to find, refer to and describe such mines, veins and deposits, as well for the purpose of preparing a prospectus and offering the property for sale, as for the purpose of working the same. The position of such monuments and that of other important points shall be determined geographically by means of the latitude and longitude, and the elevation above sea level calculated by the plaintiff. For the service aforesaid, the defendant agreed to pay the plaintiff $3,000, as follows: $1,500 on the execution of the contract (which was paid) and the balance ($1,500) on the completion of the work, and the rendering to the defendant at its office No. 66½ Pine street, such report, maps and diagrams on or before May 1, 1884.

The action is bought to recover the last installment ($1,500), and the question to be determined is whether on the evidence the plaintiff has shown such a performance of the contract on his part as entitles him to a recovery. Upon the trial the plaintiff's counsel. undertook to set aside the contract and recover the reasonable value of the services on the ground of constructive fraud, but the plaintiff declined to. impute fraud to the officers of the defendant, and the facts seem to justify the inference

Torrey v. Balen Agricultural and Mining Co.

that the plaintiff was right in his determination. The question of substantial performance is really the issue to be determined. Historians have associated the discoveries of Columbus with Veragua, and have published extravagant accounts of the mines of gold with which Veragua abounded, and the object of the plaintiff's employment evidently was to test the truth of these statements, and of similar reports made by interested parties in the neighborhood ; and the particularity of detail in the contract indicates that the defendant expected something upon which its officers could pin its future prospects, hopes and acts in regard to the feasibility of entering upon and prosecuting their agricultural and mining scheme, or something which might enlighten purchasers in regard thereto, in case a sale of the lands was deemed advisable.

The intent is the life of the contract, and the question is whether this intent in regard to performance was substantially carried into execution in the manner contemplated by the parties.

*Johns, Benner & Wilcox,* for plaintiff.

*J. M. Pray,* for defendant.

McADAM, Ch. J.—The plaintiff sailed from New York on the first of March, 1884, on the steamer *Acapulco,* and returned to New York on the fourth of April, 1884. He was absent thirty-five days. It took about fourteen days to reach the property, and about the same number of days to return, making twenty-eight days of necessary traveling. This leaves seven days upon the 24,711 acres. The plaintiff in his evidence says, " I have not claimed that I was on the actual ground over one week."

How much surveying, examining, prospecting, &c., the plaintiff did in this brief time may well be inferred from his evidence. He says, " I found it an almost inac-

cessible country, only possible to get from one part to another by canoe up these narrow rivers, and a few trails —a trail in that country being made by a man going ahead of you with a machette or long knife, cutting down the palm trees and tangled growth which grows up there in six months so that you can't get through it without having to repeat the operation."

At another part of the testimony the plaintiff was asked the following :

" Q. From the examination you made, are you able to swear that there are no minerals, gold or silver, on the land of the company in Columbia, which you went to examine, other than that you have stated in your report ?"

" A. No, sir ; because it would be contradicting my report which I gave them. My report states that, to the best of my knowledge and belief, it is not a promising outlook ; gold might be discovered there in future years."

While the outlook might not be promising to the experienced eye of the expert, the contract evidently contemplated something more than this ; for it requires the plaintiff " to make as thorough and minute examination and survey of the property as may be necessary for the purpose of discovering and locating such mines, veins and deposits of minerals as may exist thereon."

This required work, search, investigation, examination, prospecting, and the like, and the seven days spent upon the 24,711 acres was hardly sufficient time to do this conscientiously. The plaintiff evidently satisfied himself that the " outlook was not promising ;" but he did not perform his contract. The task was evidently more than he had contemplated when he undertook the employment. The key-note of the trouble is expressed by the plaintiff in these words : " I wrote letters explaining the condition, and sent a telegram, stating that from all the knowledge I had obtained up to that point *the property was far more difficult to examine than I anticipated*, and I telegraphed

Torrey *v.* Balen Agricultural and Mining Co.

for $500 additional money, *so I might do something for the company, and not come back and make an utter failure.*" The company was under no obligation to send the additional $500, and the plaintiff, no doubt discouraged at the unpromising condition of affairs, returned, and made the best report he could under the circumstances. The plaintiff is no doubt a competent assayer and mining expert, and intended to do all he undertook, but, unfortunately agreed to do what he could not with the limited assistance and time he allowed himself to do the work. He testified in a fair and candid manner, and I have no reflections whatever to cast upon him or his testimony. I find, however, as matter of fact, that the contract has has not been performed on his part, and this finding virtually disposes of the entire case.

STORY, in his work on Contracts (§ 968) says : "The express stipulations of a contract must be exactly performed, and [even] a substantial performance is not sufficient, where the time *or the exp. ess manner and details* agreed upon are essential, and are not complied with."

If a party covenants to do an act, he is bound to perform what he undertakes ; the difficulty or improbability of accomplishing the undertaking will not excuse him. Nothing short of showing that the thing to be done cannot be done will relieve him from his obligation (Beebe *v.* Johnson, 19 *Wend.* 500).

That the thing undertaken can be done, is practically conceded—an advance of $500 more money would have assisted in doing more than was done. This the plaintiff in effect admitted when he called for the additional $500, to prevent failure.

For these reasons, and without going into further details, which my finding has made unnecessary, there must be judgment for the defendant, with costs, and two per cent. allowance.

### Synopsis of Defendant's Brief.

Contract being entire, plaintiff must show substantial performance of every material part of the contract, according to its terms

(50 *N. Y.* 145 ; 56 *Id.* 665 ; 62 *Id.* 264 ; 80 *Id.* 312 ; 68 *Id.* 507 ; 75 *Id.* 16–6 ; 73 *Id.* 406 ; 85 *Id.* 407 ; 1 *Week. Dig.* 390).

The defects must not pervade the whole, or be so essential that the object which the parties intended is not accomplished (62 *N. Y.* 264).

Willful failure to perform prevents recovery (61 *N. Y.* 645).

What was said by the parties at the time of making the written contract is incompetent (85 *N. Y.* 412 ; 102 *Id.* 513).

A promise to pay cannot be implied outside of the writing (75 *N. Y.* 74; 2 *Cliff.*, 590).

There can be no recovery on *quantum meruit* (68 *N. Y.* 23 ; 3 *Id.* 420 ; 22 *Id.* 162 ; 20 *Id.* 312 ; 93 *Id.* 39, 44 ; 2 *Den.* 110).

If there be a written contract, it must be produced (24 *Wend.* 60, 65 ; 7 *Bosw.* 418).

When written contract appears, the parol evidence must be stricken out (*Abb. Trial Ev.* 62 ; 24 *Pa. St.* 314, 317; 102 *N. Y.* 513).

The meaning of a contract is to be gathered from a consideration of all of its provisions, and the inferences naturally derivable therefrom as to the intent and object of the parties making it, and the results intended to be accomplished by its performance (102 *N. Y.* 215).

It is a familiar rule that parol proof of extrinsic circumstances may be given to apply a description to its subject matter (102 *N. Y.* 215 ; citing 21 *Wend.* 651 ; 16 *N. Y.* 267 ; 47 *Id.* 221 ; 2 *Paige*, 11).

Evidence of custom inadmissible to interpret contract (102 *N. Y.* 652).

Amendment on trial cannot be allowed (102 *N. Y.* 513).