CHARLES STARBIRD, Appellant, v. SAMUEL H. BAR-
RONS, EDWARD KIRK, and NATHANIEL LAIRD, Re-
spondents.

*Contract—Failure of performance by one party—Rescission—Damages.*

In every contract between parties, where the performance by one party pre-
supposes some act to be done by the other party prior thereto, or contempora-
neously therewith, the neglect or refusal to perform such act not only dis-
penses with the obligation which the other party was under to perform on
his part, but, where the circumstances are such that a rescission of the contract
will not afford an adequate remedy to the party who was ready to perform,
he is entitled to a recompense against the delinquent equal to the damages
which such delinquency caused him.

If the special circumstances under which a contract is made be communi-
cated by Plaintiff to Defendant, the damages resulting from a breach of such
contract, being such as might have been reasonably contemplated by the
parties on such failure, would be a proper measure of the amount to be
awarded by the jury for such breach.

THIS is an appeal from a judgment of the General Term of the
Supreme Court in the Seventh District, affirming a judgment of
the Special Term in the same district, denying a motion for a new
trial after verdict for Defendants at the Circuit.

The case presented by the record is substantially as follows :

On the 10th day of November, 1858, the Plaintiff, who was
owner and master of a canal-boat then lying at Rochester, entered
into an agreement with the Defendants, who were partners en-
gaged in buying and shipping potatoes, by which agreement the
Plaintiff engaged to carry a boat-load of potatoes, five thousand
bushels, and more if his boat would hold them, from Rochester to
New York, during the then season of canal navigation.   The
Defendants engaged to load the boat within three days.   They
were to get the boat off within three days without fail.   There

was a break in the canal, three or four miles east of Rochester, which it would take about two days to repair. The Plaintiff wanted to get ahead of the crowd of boats, and so informed the Defendants. The Plaintiff was to have his boat at the Defendants' warehouse, near the mouth of the feeder, east of the weigh-lock, between twelve and one o'clock on the day of the contract, and was to receive at New York thirteen cents per bushel freight, except $200, which was to be advanced to him at Rochester, to pay tolls.

The Plaintiff had his boat at the time and place appointed, but the Defendants were eight days and over, instead of three, in getting the boat loaded.

The Defendants did not furnish a full load within five hundred or six hundred bushels; and the Plaintiff so informed the Defendants the night before starting.

On the night of Thursday, the 18th of November, as soon as the load was on board, the Plaintiff started with his boat, one of the Defendants going with him. The only difficulty which the Plaintiff at first encountered was the crowd of boats that got ahead of him, the breach in the canal having been repaired so that the boats began passing on the previous Saturday.

At Fultonville, some miles west of Schenectady, the boat encountered ice, and with great difficulty was pushed forward, by the 8th of December, to Schenectady, where she was frozen in for the winter.

At Schenectady the Defendants took charge of boat and cargo for the winter, under an alleged engagement that nothing should be done to injure the boat. The Plaintiff claims that the boat was greatly injured while in the Defendants' care at Schenectady, through their negligence.

The Defendants, at Schenectady, took out 1,200 bushels of the potatoes and sent them to New York by railway, and directed the Plaintiff to take the residue to New York in the spring, which he did, reaching New York April 16.

At New York the Plaintiff was detained in unloading fifteen days, when he could have been unloaded, as was claimed, in twelve

hours; the Defendants taking off the load only as they sold it out. The usual time for unloading is three days.

The Defendants paid freight, but refused to pay damages.

The Plaintiff brought this action to recover damages for the failure of the Defendants to furnish a full load for the boat; for the delay in loading; for the consequent failure of the Plaintiff to get through to New York that season; for injury to the boat at Schenectady; and for unnecessary delay in unloading at New York.

On the trial, the Court excluded nearly all the evidence offered on the part of the Plaintiff to show his damages, and the jury found a verdict for the Defendants, upon which judgment was entered, which was affirmed at the General Term, from which judgment the Plaintiff appeals to this Court.

*Selden* for Appellant.

*C. Jordan* for Respondent.

BACON, J.—The ruling of the Judge upon the trial, excluding the evidence offered on the part of the Plaintiff, by which he proposed to show that he was not responsible for the potatoes being frozen, was, it seems to me, manifestly erroneous. This offer was first made at Circuit, at folio 155 of the case, and rejected, and an exception taken, and was again repeated just at the close of the testimony, in the following form: " The Plaintiff then offered to show that the Defendants took charge of the boat at Schenectady, and undertook to guard the cargo, and to show that the potatoes froze by their default, and the Plaintiff was not responsible for their freezing; this proof to be used on the question of demurrage." This offer was objected to and rejected, and the Plaintiff excepted.

That the pertinency of this proffered proof may be perceived, it is necessary to state that in the answer of the Defendants they had set up a counter-claim, among other matters, for the sum of $200 " for loss on frozen and rotten potatoes ; " and on the trial one of the Defendants was examined on this subject, and gave testimony, without objection, that the potatoes were frozen under the horse-stable in the boat, five feet thick and two feet deep at

the top, and that it took a long time to pick out the frozen ones, &c.

The precise object, for which this evidence was given was not stated, but it must have been offered in one of two aspects, or perhaps to subserve two purposes : to wit, either to create a counter-claim to any damages the Plaintiff may be supposed to have established, or to meet the claim for demurrage, by giving evidence tending to show that any delay occasioned by the time required to unload the boat was caused in good part, if not wholly, by the carelessness and negligence of the Plaintiff in respect to the cargo.

If in either view it was material, as it seems to have been considered, then it clearly was the right of the Plaintiff to offer this rebutting and explanatory evidence.

Although most of the testimony which was offered by the Plaintiff to show his alleged damages was excluded by the Judge, yet he was at liberty to claim, under the restricted rule of the Court, that for the space of five or six days he was detained at Rochester, before the loading of his boat was completed, he was entitled at least to the value of the use of the boat for that period, for the jury might find upon the evidence that it was owing to no fault of his that such delay occurred, but was solely chargeable to the Defendants. If so, this claim could only be successfully met and overcome by establishing on the part of the Defendants some counter-claim that would offset and extinguish it ; and upon hardly any other theory than this can the verdict, which is general for the Defendants, be accounted for. It was therefore not only pertinent, but very material, that the Plaintiff should be allowed to give evidence which should meet and repel this counter-claim, and show that, under the circumstances proposed to be established by the evidence, it had no valid existence.

Upon the question of demurrage, also, for which it was in the second instance specifically offered, it was, it seems to me, equally pertinent. The jury might well, upon the evidence as it stood, be justified in concluding that the condition of the cargo was such, that greater expedition than was made in discharging it

was not possible, and could not in fairness be demanded of the Defendants. And yet it was true that this state of things was brought about by the culpable default of the Defendants themselves, and by a violation of their own prior undertaking to guard and secure the cargo against the occurrence of the very thing that caused the delay. The Plaintiff was manifestly entitled to give this explanation, and thus meet and repel the claim to exemption founded on the Defendants' evidence. Upon both grounds the testimony should haye been admitted, and the exclusion was erronèous.

If I am right in this conclusion, the judgment must be reversed, and a new trial granted; and in that event it may be expedient that the other question principally discussed upon the argument should be passed upon by this Court. Upon the trial, after the Plaintiff had testified that, by the contract, the Defendants were to load the Plaintiff's boat in three days from the 10th of November; that the necessity for this arose from the fact that, in consequence of a break in the canal, which it would take two days to repair, a crowd of boats were lying west of the Defendants' warehouse, and therefore it was essential that the Plaintiff should be loaded and be able to start in advance of this fleet, and thus gain time, which at that season was all-important; that this fact was explicitly stated to the Defendants, as the reason why it was necessary to be thus expeditious, and that, by the contract, it was imperative upon the Defendants to get the Plaintiff loaded within the time specified; the Plaintiff offered to show that, after Saturday, the 13th of November, and before he was ready to start, a crowd of boats had passed on east ahead of him. This was objected to by Defendants' counsel, as being too remote and as not material, and was rejected, and the Plaintiff excepted. The offer was again repeated, coupled with an offer to show the damages caused by the delay to the Plaintiff, and again rejected; and finally the Plaintiff offered to prove that he went forward with all diligence; could get no further than Schenectady, in consequence of the ice, and that this was caused by the delay of the Defendants at Rochester. This offer was objected to on the

ground of immateriality, and the objection was sustained by the Court, and the Plaintiff excepted.

In passing upon these objections, we have of course the right to assume the existence of the facts which had been testified to, and that the jury would have found in accordance with them; and, therefore, that it was proved that the contract was absolute that the boat should be loaded in three days, and the Defendants were informed of the precise state of things which made this necessary and imperative.

What, then, is the rule of damages applicable to such a case? Is it true, then, as the Court in the opinion given at Special Term assume, that, as the Defendants had failed to perform on their part, the Plaintiff was not only at liberty, but it was his duty to refuse to undertake the performance of the contract on his part; and thus a right of action would exist, in which the only damages would be the difference between the ordinary rate of transportation of similar property and the rate agreed to be paid to the Plaintiff, if the difference was in his favor, with the value of the use of the boat while held in readiness to receive a load within the three days provided for in the contract?

Beyond all doubt the Plaintiff was at liberty, on the failure of the Defendants to perform the engagement on which his depended, to rescind the contract, and claim at least such damages as are indicated in the opinion of the Court; but whether, under such a state of things, that would be the entire measure of damages, may well be questioned. But I do not understand that a party is not at liberty, if he thinks he sees a fair prospect, or, indeed, but a reasonable hope that he may still perform, notwithstanding the default of the other party, to go on and complete his engagement, and earn the compensation to which in that event he will be entitled; and if he ultimately fails, despite a strenuous effort to perform, to accomplish the result, that he cannot claim all the damages, and repair the losses he has suffered by the default of the other party. While a party thus situated is at liberty to rescind a contract, he is not obliged to do so; and especially is he under no obligation to do this when it is not

probable that a rescission will afford him a remedy adequate to the damages he has sustained.

The principle which should govern such a case as this is nowhere more clearly stated than by Judge Denio, in the case of Cross v. Beard (26 N. Y. 88), and it is, in my judgment, the true rule applicable here. "In every contract," he says, " between parties, where the performance by one of them presupposes some act to be done by the other party prior thereto, or contemporaneously, the neglect or refusal to perform such act not only dispenses with the obligation which the other party was under to perform on his part, but, where the circumstances are such that a rescission of the contract will not afford an adequate remedy to the party who was ready to perform, he is entitled to a recompense against the delinquent equal to the damages which such delinquency has caused him." Applying the principle here enunciated to this case, I think the Plaintiff had clearly the right to give the excluded evidence.

It should be remembered that the period in question was very near the ordinary close of navigation ; that it might very readily be assumed that, if this contract had been abandoned, the Plaintiff could have secured no other cargo ; that he could have taken this to New York, as indeed the result in this case pretty clearly demonstrates, and the consequence, therefore, would have been that he would have lost his entire freight to New York. The rule then, I think, is that, while the Plaintiff was at liberty to rescind the contract, he was not bound to do so on the default of the Defendants, but that it was his right and privilege to go on, and undertake the performance as diligently and faithfully as was possible, and, thus doing, he was not limited to the rule of damages to which the Court, by its ruling on the trial, confined him, but was entitled to recover all the damages which, by the default of the Defendants, he naturally and necessarily sustained.

That the special circumstances under which the contract in question was made have a bearing not only upon its interpretation, but upon the rights of the parties under it, I think is very clear upon authority. Thus in Hadley v. Baxendale (9 Exch.

354; 26 Eng. L. and Eq. 398), the rule is thus stated by Baron Alderson : "If the special circumstances under which the contract was made were communicated by the Plaintiff to the Defendant, and thus known to both parties, the damages resulting from the breach of such a contract, and which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under those special circumstances so known and communicated."

So, where goods are purchased for a particular market, and that known to both parties, the damages are governed by the price in that market (Hargous v. Ablon, 5 Hill, 472); and the general rule, long recognized in the Courts of this State, and applied in numerous cases, is, that a party injured by the breach of a contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain, and such as might naturally be expected to follow the breach.    (See Griffin v. Colver, 16 N. Y. 489.)

Let us suppose this case had been reversed, and the Defendants had brought an action against the Plaintiff, claiming damages for his failure to deliver the cargo in New York before the close of navigation, in the fall of the year.    Can there be a doubt that the Plaintiff would have been entitled to show the fact that he was detained by the neglect and default of the Defendants, and in violation of their agreement to load him in season to enable him to accomplish the voyage, and thus not only defeat the alleged claim of the Defendants, but prove affirmatively the facts which entitled him to claim what he had lost by such default ?    And if so, the right to recover these damages, by a suit instituted directly, therefore, seems to me equally clear.

It is within the principle established in Stewart. v. Keteltas (36 N. Y. 388), that hindrances by one party to a contract, whereby the other is prevented from completing his part of the contract by the time stipulated, afford a legal excuse for non-performance within such period; and not only this, but, as it seems to me, affords the party thus hindered the right to redress for any damages he may have suffered by reason of such hindrance, delay,

or default.    Thus, in the case cited, Stewart & Howell were not only not bound to abandon their contract on the failure of Keteltas to perform seasonably on his part, but were permitted to go on, and claimed and recovered their full compensation, although the work was not completed until long after the stipulated time.  And the right to recover damages seems to me to stand upon the same substantial ground of principle.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

Reversed.

JOEL TIFFANY,
State Reporter.