| 113 | 207 |
| 124 | 530 |
| 113 | 207 |
| 126 | 277 |
| 127 | 406 |
| 113 | 207 |
| 129 | 280 |
| 113 | 207 |
| 138 | 459 |
| 113 | 207 |
| 140 | 255 |

ALEXANDER VAN RENSSELAER, as Executor, etc., Respondent, *v.* ANNIE W. VAN RENSSELAER et al., Appellants.

The will of P., executed in 1871, after various legacies which he directed to be paid out of a certain fund, gave a legacy of $10,000 to the testator's sister E., the directions for the payment of which were as follows: " To be paid by my executors when it shall be convenient for them, without regard to the time fixed by law, out of the moneys derived from the sale of the Van Schaick farm, \* \* \* or otherwise, as it shall seem best to them. It is further my will that this legacy shall be deemed subservient to all others." Following this was a gift of the residuary estate. The testator had, previous to the execution of the will, entered into a contract with agents for the sale of the farm mentioned, in city lots. He died in March, 1873. Previous to June, 1874, there had been paid over to the sole acting executor, or upon his order to the residuary legatee, over $15,000 of proceeds " derived from the sale " of said lots, and said legatee received more than sufficient to pay the legacy to E. In an action against said executor and legatee for an accounting and to compel payment to E. of said legacy, *held*, that by the will the legacy was charged upon the land specified and the proceeds of the sale, which not only stood as security, but were to be deemed the primary fund from which such payment should be made; that when the residuary legatee took the land and its proceeds she took it *cum onere*, and having accepted the devise must discharge the obligation resting upon it; that the provision making the legacy " subservient to all others " did not include the residuary gift, but simply the general legacies; and that the " convenience " referred to respected the situation of the estate, not the choice or arbitrary will of the executor, and when all the other general legacies were paid, leaving a surplus of the general fund intact for the residuary legatee, and there remained sufficient from the farm sales to pay the legacy to E., it became due and

---

* The omitted portion of the opinion treats of small items in the account and presents nothing of general interest.

payable, and both the executor, who had misappropriated the money and the residuary legatee who had wrongfully accepted it, became liable for its payment, although there remained unsold of the farm lands sufficient to pay the legacy.

Also, *held*, that plaintiff was entitled to interest from the time when sufficient of the proceeds of the farm sales had been realized to pay her legacy.

Where a complaint presents a proper case for equitable jurisdiction the fact that the possible result of the action may be a personal judgment does not oust the court of jurisdiction, or entitle the defendant to a jury trial.

The executor had had a final settlement of his accounts. Upon that settlement, against the objection of E., the executor was allowed to exclude from his account the proceeds of the farm sales, and the account was settled without regard thereto. *Held*, that the decree of the surrogate upon such settlement was no bar to this action. (Code Civ. Pro. § 2742.)

(Argued March 11, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 26, 1887, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Thomas Allison* for appellants. The decree of the surrogate, upon the accounting by the defendant Hamilton as executor, was conclusive in favor of both of the defendants, Hamilton and Van Rensselaer, against the right of the plaintiff to recover the judgment rendered and appealed from herein. (Code, §§ 2472, 2743, subds. 3, 4; *Stiles* v. *Burch*, 5 Paige, 132; *Purdy* v. *Hayt*, 92 N. Y. 446; *In re Verplanck*, 91 id. 439; *Riggs* v. *Cragg*, 89 id. 479; *Matter of Hood*, 90 id. 512; *Leavitt* v. *Wolcott*, 95 id. 212; *Crabb* v. *Young*, 92 id. 56; *Brown* v. *Mayor, etc.*, 66 id. 391; *Demarest* v. *Darg*, 32 id. 281.) The legacy being a demonstrative one, it was not payable out of and could not be recovered from the general assets of the testator until the fund out of which it was primarily payable had been exhausted. (*Giddings* v. *Seward*, 16 N. Y. 365;

*Pierrepont* v. *Edwards*, 25 id. 131; *Florence* v. *Sands*, 4 Redf. 206; *Enders* v. *Enders*, 2 Barb. 367; 2 Williams on Executors [4th Am. ed.] 994; 2 Redfield on Wills [3d. ed.] 127; *Selden* v. *Watts*, 9 Week. Rep. 847.) The judgment appealed from cannot be sustained upon the theory that the legacy is a charge upon the land. (*Warren* v. *Davies*, 2 M. K. Ch. 49.) There could, in no event, be a judgment for this legacy against both the executor, as such, and Mrs. Van Rensselaer, who was not executrix, and was neither sued nor held liable as executrix, but who was, and was sued and held liable as residuary legatee and devisee. (Code, § 1821.) The court below erred in allowing interest on the legacy from one year from the granting of letters testamentary. (2 Roper on Legacies, 1245, 1246; *Wheeler* v. *Ruthven*, 74 N. Y. 428.) The defendants, appellants, had a right to have the issues tried before a jury, and could not be deprived of that right by plaintiff pleading in her complaint a cause of action in equity. (*Beck* v. *Allison*, 56 N. Y. 366, 372, 373 : *Wheelock* v. *Lee*, 74 id. 495.)

*J. Edward Ackley* for respondent. The action was properly tried at Special Term, being such a one as would be called equitable, under the former practice, and the request for a trial by jury was properly overruled. (Code Civ. Pro. § 1819; *Rundle* v. *Allison*, 34 N. Y. 180; *Kelsey* v. *Western*, 2 id. 500 ; 508; *Loder* v. *Hatfield*, 71 id. 92; 3 Williams on Executors, 2117, note *b*; 1 Story on Eq. Jur. § 593; 2 Roper on Legacies [White's ed.] 685; Jeremy's Eq. Jur. 104; *Murtha* v. *Curley*, 90 N. Y. 372; *Hale* v. *Omaha Nat. Bk.*, 49 id. 631; *Marquat* v. *Marquat*, 12 id. 336; *Barlow* v. *Scott*, 24 id. 40; *Emory* v. *Pease*, 20 id. 62; *Conaughty* v. *Nichols*, 42 id. 83; *Bell* v. *Merrifield*, 109 id. 202.) An account of the receipts for the sale of land having been rendered, it became unnecessary to give that relief, and a simple money judgment was ordered, but the nature of the case was not thereby altered in any particular, or changed into a legal action. (*Bell* v. *Merrifield*,

109 N. Y. 207; *Murtha* v. *Curley*, 90 id. 372; *Hale* v. *Omaha Nat. Bk.*, 49 id. 631.) The appellants waived any right to a trial by jury by noticing the case for trial at Special Term. (*McKellar* v. *Rogers*, 109 N. Y. 471.) As the defendant Van Rensselaer accepted the devise of the farm, shown by her conveying part of it, she became liable to pay the amount of the plaintiff's legacy. (*Loder* v. *Hatfield*, 71 N. Y. 104; *Glen* v. *Fisher*, 6 Johns. Ch. 33; *Maxwell* v. *Wettenhall*, 2 P. Wms. 26.) The questions raised upon the accounting before the surrogate and those raised in this action are entirely different. (Redfield on Surrogates, 571; 2 R. S., chap. 6, tit. 3, art. 2, § 46; 2 Code Civ. Pro. § 723.) But even if the questions before the surrogate had been the same as those involved in the present action, the surrogate had no jurisdiction to try and determine them. (*Bevan* v. *Cooper*, 72 N. Y. 328; Code Civ. Pro. §§ 2718, 2742, 2749.)

FINCH, J. This action was brought to enforce the collection of a legacy, and resulted in a judgment for its recovery, with the interest accrued, against the sole acting executor and against the residuary legatee. The terms of the bequest were somewhat unusual. The testator, Philip Livingston Van Rensselaer, first gave to his two brothers, and to his sister Alice, $10,000 each, to be paid out of moneys which he had loaned from time to time to a relative whom he named. He then gave to his sister Elizabeth the legacy now in question, using the following language: "I hereby give and bequeath to my sister Elizabeth the sum of ten thousand dollars, to be paid by my executors when it shall be convenient for them, without regard to the time fixed by law, out of the moneys derived from the sale of the Van Schaick farm left me by my brother Courtlandt, or otherwise if it shall seem best to them. It is further my will that this legacy shall be deemed subservient to all others." The testator then gave a small legacy to the College of New Jersey, and all the rest, residue and remainder of his property to his wife Annie. He named her as executrix, and the defendant Hamilton as executor, but the latter only qualified and acted.

The will is dated May 26, 1871, and the testator died in March, 1873. It is now sixteen years since the will took effect, and the legacy given to Elizabeth remains still unpaid. She has died, and her representatives are seeking in this action to enforce the gift so long and persistently withheld. In 1870, and about one year before the date of the will, the testator had entered into a contract with John P. Albertson and Levi Smith for the sale by them in city lots of the Van Schaick farm, which was situated near the city of Troy. They were described as his agents and as acting in his employ. They were to find purchasers and the deeds to be executed by Van Rensselaer; the proceeds of all sales were to be received by them, applied first to the payment of necessary disbursements, and then the balance to be paid to Van Rennselaer until he had received the full sum of $20,000, at which time the unsold land was to belong in equal proportions to the two parties to the contract, and the proceeds of further sales to be equally divided. Under this contract the testator, before the date of his will, had received in mortgages, as the product of sales, a little over $2,000, and was expecting more to follow; and before his death had received in such mortgages a total of $8,140. These were proceeds " derived from the sale of the Van Schaick farm," and were turned into money after his death by a transfer of them to Albertson and Smith, who discounted them at a moderate reduction, and they became in the hands of the executor " moneys derived from the sale of the Van Schaick farm," and within the precise description of the will. The reduction in the amount of these mortgages by the process of turning them into money was probably not far from $1,000, so that something over $6,000 or $7,000 was realized in cash. This sum was paid to the residuary legatee, and the executor declares that none of it came into his hands; but he admits that he executed the assignments to enable the legatee to get the money, and it is plain that the purchasers from the executor would have paid him if he had not authorized a direct payment to the legatee.

It is found as a fact that, after testator's death, proceeds of

the farm passed through the executor's hands to the amount of $17,240. The appellants insist that in this sum is included the amount realized from the mortgages sold. I do not see how that can be true. Smith furnishes an abstract of all payments made to the estate which, of course, includes the mortgages afterwards discounted, and the total is $23,584. If we deduct from that the proceeds of those mortgages, which the court finds to have been $6,344, treated as received by the testator in his lifetime, there remains exactly the $17,240 fixed by the finding. Smith swears that, in round numbers, about $24,000 was realized from the sales, and that more than $20,000 had been paid on account of the contract to the testator and the estate. I do not deem it material to further examine that subject, for the proceeds of the testator's mortgages were never included by the executor in the general assets, or accounted for as such, but were moneys derived from the farm sales and specifically applicable to the legacy due Elizabeth. The executor misappropriated them when he permitted their payment to the residuary legatee.

The widow has been paid and has received into her possession more than enough of the proceeds of the farm to pay the legacy to Elizabeth. That legacy, by the terms of the will, was charged upon the specific land and the proceeds of its sale. The legacy was to be paid out of it, and it was not only to stand as security for the payment; but to be deemed the primary fund from which such payment should be made. When the residuary legatee took the land and its proceeds she took them *cum onere*, subject to the charge imposed upon them, and having accepted the devise must discharge the obligation resting upon it.

The principal defense argued in her behalf is founded upon the peculiar terms of the legacy. Proof was given that enough of the unsold land remained to provide for the legacy at some time in the future when sales shall again become possible at what are deemed suitable prices by the parties having them in charge, and so it is claimed that the legacy of Elizabeth could be postponed because it was payable at the con-

venience of the executor, and because it was made subservient
to all the other legacies.   By the words "all others" is meant
all other legacies of the same class and kind ; that is, all the gen-
eral legacies given by the will.   The language is "*this* legacy
shall be subservient to all others."   The explanation of the pro-
vision seems to me quite obvious.   Outside of the Van Schaick
farm the bulk of the testator's property was a debt due to him
from a relative, and sufficient in amount to pay the legacies which
had a preference in the mind of the testator, and beyond that to
furnish a surplus, adequate, if not further diminished, for the
support of the widow.   That fund he desired to preserve for
those purposes.   Elizabeth had married a wealthy husband, and
if any legacy should fail or abate, or be sensibly diminished, he
preferred it should be that, and such was his meaning in
charging it upon the Van Schaick farm and making it payable
out of the existing contract for its sale and declaring it as a
legacy subservient to all others.   But nothing in the will pro-
vides or indicates that when all other legacies were paid, and
the surplus of the general estate was preserved intact for the
widow, and there yet remained sufficient from the farm sales
to pay Elizabeth, that she should be further postponed.   He
knew that the amount and time of the sales would be uncer-
tain, and, lest for that reason the general estate might be drawn
upon to pay Elizabeth, he made her legacy payable at the con-
venience of the executor.   But that convenience respected
the situation of the estate, and not the choice or arbitrary will
of the executor ; and when money enough was realized from
the sales to pay Elizabeth from that designated source, there
was no excuse for further delay, the legacy became due and
payable, and the executor who misappropriated the money,
and the legatee who wrongfully accepted and retained it,
became alike liable for its payment.

But further difficulties have been suggested.   The case was
tried at Special Term.   At the outset the defendants objected
to the tribunal "as an improper one for the trial of any ques-
tion involving a personal judgment" against either of the
defendants, and "demanded that *if such question was to be*

*tried* it should be by a jury trial." This objection was not that the case as disclosed by the pleadings was only triable by a jury. It looked not to the case as presented by the complaint, but as it might possibly be decided at the end. Such an objection is wholly unsound. It conceded that the action as it came into court was of an equitable character, as it certainly was, but insisted that if the final relief was to be a personal judgment, the case was one for a jury. A court of equity does not in that manner lose its jurisdiction, and, having once acquired it, retains it to the end, even though it may turn out that adequate relief is reached by a merely personal judgment. That is not an uncommon occurrence. But a more serious objection taken in behalf of the executor was founded upon the settlement of his accounts, as such, and the final decree of the surrogate, which is claimed to be conclusive upon the issues raised in this action. Upon that settlement the executor wholly excluded from his account the proceeds of the farm sales, and was neither charged with them on the one hand nor credited with them on the other. By his own act, the surrogate assenting, they were withdrawn from that litigation and left outside of the settlement made. To this the legatee Elizabeth objected, but in vain, and the account was settled irrespective of any of the proceeds of the Van Schaick farm. That decree has no effect upon what was not involved in the settlement, because explicitly withheld from it and put outside of its operation. The Code of Civil Procedure (§ 2742) provides upon what facts the judicial settlement of an executor's account shall be conclusive and expressly excludes all others. The facts settled are: (1.) That the items of expenditure allowed are correct. (2.) That the accounting party has been charged with all interest for money received by him and *embraced in the account.* (3.) That the money charged as collected was all that was collectible *on the debts' stated in the account.* (4.) And that the allowances for increase and decrease, *as made* in the *value of property,* were correctly made. It will be observed that none of these facts are in any manner questioned or controverted in this action. What concerns us now

was not before the surrogate then or involved in any of the facts as to which the decree is conclusive. By the action of the executor himself the questions here presented, if, indeed, the surrogate could have solved them at all, were withdrawn from his jurisdiction and left for the consideration of another forum.

A further objection is taken to the allowance of interest which was computed in the judgment from one year after the issue of letters testamentary. That is the rule where no time of payment is fixed by the will, and the legacy then becomes due. But the testator set aside the legal rule by the very terms of his bequest, and made the legacy payable out of a specific fund, and when convenient for the executor. We have already said what was meant and intended by that convenience, and that the legacy became payable when sufficient moneys had been realized from the farm sales to pay the bequest. The figures furnished by the agents who made the sales, show that on the 1st of June, 1874, they had exceeded $16,000, and more than $15,000 of the purchase-money had been paid in cash to the executor or upon his direction. With funds in hand at that date sufficient to pay the legacy, and no possible inconvenience to the estate preventing that application, the legacy became due and interest began to run upon it. Its allowance, therefore, was not error.

The judgment should be affirmed, with costs.

All concur, GRAY, J., concurring in result.

Judgment affirmed.