### THORNE *v.* FRENCH.

(New York Superior Court — General Term, July, 1893.)

A court of equity having once acquired jurisdiction of a cause retains it to the end, though adequate relief is reached by a merely personal judgment.

June 19, 1891, defendant, having acquired the exclusive acting rights in an opera owned by plaintiffs, agreed to produce the same at a theater of which he was the manager following the opera then on exhibition there, which ran until February 13, 1892. Instead of producing plaintiffs' opera after February 13, 1892, other attractions were produced under defendant's management, who announced, in January, 1892, his determination not to produce plaintiffs' opera at all. In an action to enjoin defendant from continuing the use of his theater contrary to the covenant with plaintiffs, and for damages, the contention finally resolved itself into an effort to recover damages, the contract providing in addition to certain royalties that if on the 1st day of February, 1892, the defendant shall not have already produced said opera, he shall pay to the plaintiffs the sum of $2,000, in full payment for the first fifty performances given. The main defense was a failure by plaintiffs to carry out a certain provision of the contract the performance of which the court found had been waived by defendant. *Held*, that under the evidence and authorities plaintiffs were relieved from all imputation of neglect or default, and were entitled to judgment for $2,000, and costs.

*Held*, further, that when, in January, 1892, defendant announced that he would not produce the opera at any time, plaintiffs were absolved from the necessity of any formal tender or offer of performance on their part.

APPEAL from a judgment in favor of plaintiffs entered upon the decision of the equity term. The opinion at the trial term states the case.

*Wm. D. Guthrie* and *W. W. Fuller*, for plaintiffs (respondents).

*Dittenhoefer & Gerber*, for defendant (appellant).

The following is the opinion of the trial term:

McAdam, J. The plaintiffs are the owners of the opera entitled "The Maid of Plymouth," Thorne being the composer of the music and Greene the author of the libretto. On June 19, 1891, the parties agreed that the defendant should have and acquire all acting rights in the opera for the United States and Canada during a specified time. That this gave the defendant the exclusive right is clear, and no negative clause was required to effectuate that purpose. The agreement provides that the defendant shall produce the opera at the Garden Theatre (of which he was manager), following the opera then on exhibition there, entitled "La Cigale," which ran until February 13, 1892.

Instead of producing the plaintiffs' opera, after February 13, 1892, the defendant permitted Richard Mansfield to produce a repertoire of plays under the defendant's management. The ostensible object of the action as shown by the bill of complaint was to obtain an injunction enjoining the defendant from continuing the use of his theater contrary to the covenant with the plaintiffs. It prays for injunctive relief and damages as well. The defendant in his answer objects to the remedy invoked upon the ground that the plaintiff has an adequate remedy at law, and an objection of like purport was again taken *in limine* at the trial by a demand that the issues be tried by a jury. While satisfied that the action is not one in which injunctive relief should be granted, that conclusion, not self-evident, was reached only after judicial investigation and consideration. No motion to dismiss was made either at the close of the plaintiffs' case, or at the conclusion of the trial. The question now is whether the court at equity term should retain the action and award damages in such a controversy or must remand it to that part of the court wherein issues of fact are triable by a jury, or of its own motion dismiss the action. In *Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 213, the court said: "The case was tried at Special Term. At the outset the defendants objected to the tribunal as an improper one for the trial of any question involving a

personal judgment against either of the defendants, and demanded that if such question was to be tried it should be by a jury trial. This objection was not that the case as disclosed by the pleadings was only triable by a jury. It looked not to the case as presented by the complaint, but as it might possibly be decided at the end. Such an objection is wholly unsound. It conceded that the action as it came into court was of an equitable character, as it certainly was, but insisted that if the final relief was to be a personal judgment, the case was one for a jury. A court of equity does not in that manner lose its jurisdiction, and, having once acquired it, retains it to the end, even though it may turn out that adequate relief is reached by a merely personal judgment. That is not an uncommon occurrence." See, also, *Lynch* v. *Metropolitan Elevated Railroad Co.*, 129 N. Y. 280. Assuming that the principle declared in the cases cited is applicable here, and that this branch of the court may retain the action and determine the issues, we proceed to consider the facts. The plaintiffs were to have for their labor certain royalties after the opera was produced, and the agreement provides that if, on the 1st day of February, 1892, the defendant shall not have already produced said opera, he shall pay to the plaintiffs the sum of $2,000, which shall be in full payment for the first fifty performances to be given by him.

The bill as to injunctive relief is not insisted upon, and the contention has finally resolved itself into an effort to recover the specific sum.

The main defense is that the contract called for the delivery by September first of the materials to produce the opera, viz.: Band parts, leader's score, twenty or more vocal scores, also diagrams of both scenes and the plates of all costumes for principals and chorus; also cuts, drawings or designs of all properties.

The plaintiffs failed to perform this provision of the contract, and it is claimed that, as a consequence, no action by them will lie for a breach of the defendant's agreement to pay. But strict performance of this provision was waived by the defendant. For the drawings, the defendant was to advance

$200, which was to be deducted from the first fees due to the plaintiffs under the contract.

The meaning of the term "advance" is that the defendant was to pay $200 before it would otherwise have become due. Webster's Dictionary. The defendant never paid or advanced any part of this money. It was a condition precedent on his part, and the plaintiffs could not be put in default until such sum was first advanced. *Mansfield* v. *New York Central, etc., Railroad Co.*, 102 N. Y. 205 ; *Dannat* v. *Fuller*, 120 id. 554, 558. The band parts, leader's score, and a number of the vocal scores had been prepared and were ready for delivery, and libretto was complete. Indeed, they were used at rehearsals even before the date of the contract. The additional material involved merely the mechanical work of copying and designing, which would have taken but a few days to complete. Conceding that time was of the essence of the contract, and there was no waiver in respect thereto, the defendant had the right (1) to elect to rescind the contract for failure to deliver the materials on or before September 1, 1891, or (2) to elect to continue the contract in force. The plaintiffs by their simple failure to deliver the materials did not put an end to the contract, although their default might have given the right to the defendant to elect to rescind. If he elected to rescind, it was incumbent on him to make his choice promptly. *Lawrence* v. *Dale*, 3 Johns. Ch. 23, 42 ; *McNeven* v. *Livingston*, 17 Johns. 437 ; *Hunt* v. *Singer*, 1 Daly, 209 ; 41 N. Y. 620 ; *Meyer* v. *Hallock*, 2 Robt. 284 ; *Starbird* v. *Barrons*, 38 N. Y. 230, 237 ; *Hennessy* v. *Bacon*, 137 U. S. 78. The defendant did not elect to rescind, however, but determined to continue the contract in force.

The opera of "La Cigale" had proved a great success, and defendant was in no hurry to withdraw it from the public, and, as the "Maid of Plymouth" was to be produced at the same theater, it could not be accommodated until "La Cigale" had been withdrawn, and hence there was seemingly no hurry on either side in asserting rights, making demands or pressing tenders.

Feeling his way, and acting accordingly, the defendant wrote Mr. Thorne, under the date of September 5, 1892 (five days after the alleged default): "Your favor of September 3d to hand. I shall be glad to see you when you get here, which will be in ample time for the band parts." The defendant's letter refers only to the "band parts," and it is urged that the waiver applies to nothing else. The contract was entire and indivisible, and the defendant thus knew of the failure to deliver the other material. He did not complain of delay, take the position that the plaintiffs were in default, or that the contract was at an end. On the contrary, there was, as he expressed it, "ample time." Conversations were had between the parties after this, one as late as January, 1892, in which the defendant said that the plaintiffs had better read their contract; they would get their $2,000, but he expected the material.

By electing to continue the contract in force the defendant retained his rights under it until September 1, 1893. He evidently intended to regard the contract as a subsisting obligation, and one that might ultimately prove beneficial to him.

A defendant is not bound to take advantage of a delay or forfeiture, and there may be a waiver, if there be conduct indicating an intention to waive a condition as to time, "although there are no new considerations, and although there may be no technical estoppel." *Prentiss* v. *Ins. Co.*, 77 N. Y. 483, 488; *Goodwin* v. *Ins. Co.*, 73 id. 480, 493; *Titus* v. *Glens Falls Ins. Co.*, 81 id. 410; *Sinclair* v. *Tallmadge*, 35 Barb. 602, 606. Where time is waived a party is not put in default until he has demanded performance and thus restored time as an element of the contract. *Lawson* v. *Hogan*, 93 N. Y. 39, 41; *Wallman* v. *Society*, 45 id. 485; *Leaird* v. *Fiske*, 44 id. 618; *Owen* v. *Evans*, 31 N. E. Rep. 999; *Dillon* v. *Masterson*, 42 N. Y. Super. Ct. 176.

When the parties entered into the agreement they contemplated that "La Cigale" would soon come to a close and "The Maid of Plymouth" follow it, and it in turn was to be

followed by Richard Mansfield. The defendant was at this time anxious to secure the plaintiffs' opera, the agreement so recites and all the circumstances point to the same fact.

But " La Cigale " continued its hold on the favor of the public much longer than was expected. The success continued until the advertised time for Richard Mansfield to make his appearance came around, and there was no longer room for the " Maid of Plymouth." The play was not then wanted; it had been crowded out by the circumstance stated, and thus it was that the defendant, in January, 1892, finally announced his determination not to produce it at all.

This was a complete change of front on the part of the defendant, and a surprise to the plaintiffs. That the plaintiffs were anxious to carry out their part of the contract is apparent all through the case. They did not want to crowd the defendant, or even appear to do so, but they never intended to abandon their contract or relieve the defendant from its obligations. There was substantial performance on the part of the plaintiffs, and but for the acts of the defendant there would have been literal performance.

Certain legal results follow the defendant's acts. (1) Where a party gives a reason for his conduct or decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is not permitted to mend his hold. He is estopped from doing it by a settled principle of law. *Railroad Co.* v. *McCarthy*, 96 U. S. 258, 267, and see *Gould* v. *Banks*, 8 Wend. 562; *Holbrook* v. *Wight*, 24 id. 169; *Everett* v. *Salters*, 15 id. 474; *Wright* v. *Reed*, 3 Durn. & East, 554; *Duffy* v. *O'Donovan*, 46 N. Y. 223; *Winter* v. *Coit*, 7 id. 288. Next, when the defendant finally announced that he would not produce the opera at any time, the plaintiffs were absolved from the necessity of any formal tender or offer of performance on their part. *Shaw* v. *Ins. Co.*, 69 N. Y. 286; *Gray* v. *Green*, 9 Hun, 334; *Carter* v. *Scargill*, L. R. (10 Q. B.) 564, 567.

That the defendant was not put in default promptly by a

formal tender was no doubt owing to the fact that the plaintiffs wanted their opera produced, and by the defendant at his theater. These were paramount considerations. They preferred this to a forfeiture of any kind. It was understood by the parties (all professional men) that, until " La Cigale " was formally announced to be withdrawn after a certain date, there was no hurry about the plaintiffs' opera or its accompaniments. Time was not, therefore, regarded by either party as of the essence of the contract. Indeed, viewed in the light of the circumstances, all the parties knew that it was not and could not be so regarded, and they acted on this interpretation of the agreement until the defendant formally announced his intention not to perform any portion of it on his part, except that perhaps relating to his obligation to pay the $2,000 specified in it.

In actions at law (though not in equity) time is regarded as of the essence of the contract (*Schmidt* v. *Reed*, 132 N. Y. 113 ; Chitty Cont. [11th Am. ed.] 433), yet where time does not go to the root of the matter, and the acts of the parties evidence, as they do here, the fact that it is not to be regarded as of the essence of the contract, it will violate no legal principle to give effect to the evident intuition of the parties, a feature that controls the interpretation of all contracts. This principle was carried to great lengths in *Bettini* v. *Gye*, L. R. (1 Q. B. Div.) 183, in which the contract provided that Bettini, a singer, should be in London, " without fail," at least six days before the commencement of his engagement, for the purpose of rehearsals. The plaintiff did not arrive in London until two days before the engagement. The defendant Gye, an opera manager, sought to escape liability under the contract upon the plea that time was of the essence ; but Mr. Justice BLACKBURN ruled that the plaintiff was entitled to judgment.

The decision in this case is not put on that ground, but upon the more substantial one of waiver by the defendant, which, under the evidence and the authoritative adjudications on the subject, relieve the plaintiffs from all imputation of neglect or default.

The plaintiffs are entitled to judgment for $2,000, with costs.

*Per Curiam.* The judgment should be affirmed, with costs, upon the opinion of the learned judge at the equity term.

Judgment affirmed.