Santry, J.
Frank Seaman died on the 25th day of March, 1939. He left him surviving his widow, Olive Brown Seaman, and two sons by a former marriage, Julian Seaman and Philip Seaman. The decedent left a last will and testament dated March 21, 1936, and two codicils thereto, one dated September 12, 1937, and the other dated May 2, 1938. The will and the two codicils were admitted to probate by the Surrogate of Ulster County on the 30th day of March, 1939, and letters testamentary issued to Olive Brown Seaman and Julian Seaman, the executors named therein. The testator by the will and the first codicil placed all of his property in trust for various uses and purposes, and appointed his widow and his son Julian, trustees, with his *486 son Philip, as successor trustee in the event of the death of Julian.
The first'paragraph of the second codicil provided as follows:
“ First: The real property at Yama Farms, Naponach, in the Town of Wawarsing, in the County of Ulster, State of New York, conveyed to me by Yama Uchi Land Company by deed bearing even date herewith, being the parcel upon which is erected my dwelling house known as The Hut, a garage, three cottages and chicken houses, together with the contents thereof and all furniture and furnishings usually used therein, I give, devise and bequeath to my wife, Olive Brown Seaman, for and during the term of her natural life, without bond, and upon her death, I give, devise and bequeath said property to my sons, Julian Seaman and Philip Seaman, share and share alike, or if either of them be then dead, the share of the one so dying to the survivor.”
Letters of trusteeship were issued to Olive Brown Seaman and Julian Seaman on June 7, 1940. Julian Seaman died on March 12, 1942, and letters of successor trusteeship were issued to Philip Seaman on March 14,1942.
On the 24th day of May, 1940, a decree settling the final accounts of the executors was made and entered. This decree directed the executors to “ turn over and deliver to Olive Brown Seaman the property devised and bequeathed to her for the term of her natural life,” and to turn over and deliver the balance of the property to the trustees. On the 16th day of July, 1942, a decree of judicial settlement of the accounts of the trustees up to the date of the death of Julian Seaman was made and entered.
The proceeding involved in this appeal was instituted by the filing of a petition and account on the 17th day of August, 1946. The petition was executed by Olive Brown Seaman and Philip Seaman as testamentary trustees. In it the petitioners ask for a judicial settlement of their accounts from the date of the previous decree of settlement. They also set forth therein that a question has been raised as to the meaning and effect of said article first of the second codicil to the decedent’s will, and a further question has been raised as to whether any of the property purporting to be described in said article first is owned absolutely by Olive Brown Seaman individually. The petitioners ask for a construction of said article first and a determination of the ownership of said property. Answers were filed by Olive Brown Seaman and Philip Seaman individually, and *487 by the children of Philip Seaman. The issues raised by the pleadings, so far as material here, involve a construction of said article first and a determination as to whether a collection of old English china which was housed in The Hut at the time of decedent’s death was owned by Olive Brown Seaman absolutely, or was owned by the testator.
After hearing the parties and receiving evidence the Surrogate rendered his decision in which he construed said article first to mean that Olive Brown Seaman has a legal life estate in the real and personal property devised and bequeathed in said article, and that said Julian Seaman having died, said Philip Seaman has an absolute vested remainder- in said real and personal property, to take effect in possession at the termination of said life estate. The Surrogate further decided that Olive Brown Seaman was estopped from claiming ownership of the collection of old china because said china had been included in the assets of the estate of the decedent on the transfer tax proceedings and in the accountings of the executors and trustees, and as she had participated in these proceedings and was a party thereto, she was bound by the decrees made in the premises, and in conformity with this holding the Surrogate determined that said article first applied to the old china and created a life estate therein in Olive Brown Seaman, with the remainder in Philip Seaman. Having decided that the widow was estopped from asserting a claim to the china, the Surrogate did not consider on the merits the question of the ownership of the china. Olive Brown Seaman appeals on the law and the facts from the decree and seeks a review of the findings on which it is based, and of the refusal of the Surrogate to find that the appellant is the owner in her own right of the china.
By statute every decree of a Surrogate’s Court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained, and a decree of judicial settlement of the account of an executor or testamentary trustee is conclusive evidence against all of the parties of whom jurisdiction was obtained as to all matters embraced in the account and decree. (Surrogate’s Ct. Act, §§ 80, 274.) On the other hand, the effect of such a decree is limited in its operation to the matters actually before the court. It has no effect on matters not considered or passed on in the proceeding in which the decree was made. (Van Rensselaer v. Van Rensselaer, 113 N. Y. 207; Matter of Seitz, 149 Misc. 526; Meredith v. First Trust Co. of Albany, 260 App. Div. 517; Joseph v. Herzig, 198 N. Y. 456.)
*488 The vital question presented on this appeal is whether the ownership of the old china was actually before the court in any or all of the previous proceedings. The Surrogate has found that it was. With this conclusion we do not agree. Nowhere in the previous decrees nor in the petitions or accounts on which such decrees were based, nor in the transfer tax affidavits or proceedings, except in a single instance to which reference will be made later, does the word “ china” appear. Neither is there any reference to this china or to the ownership thereof, either directly or indirectly, in any of the previous decrees. Nowhere was the court asked to pass upon the question of ownership by any petition,-account, or otherwise.
It is claimed inferentially that the china was included in the transfer tax affidavits and in the previous accounts because the total of an item of $25,682.50 set forth therein and designated as “ Real property known as The Hut, together with the personal property therein contained as appraised and inventoried,” equalled the sum of $10,000, the appraised value of the real estate — plus the sum of $5,380.50, the appraisal value of furnishings, personal effects and nonincome producing property in The Hut, and plus $10,302, the appraised value of the china collection. Solely on the basis of this breakdown of figures and because the appellant signed the affidavits and accounts containing this item, the Surrogate held that the china was included among the assets of the estate, and the appellant, by her participation in the proceeding was barred from asserting ownership to the china.
At the time of decedent’s death the collection of china, consisting of over a thousand pieces, was housed in a room in The Hut, which was a residence owned by the decedent and occupied by him and the appellant, who was his second wife. Shortly after the death of the testator, the appellant notified the attorney who was acting for her and Julian Seaman as executors, that she owned the china. This attorney arranged with Samuel Marx, Inc., to make an appraisal of the personal property of the estate, and notified the appellant by letter that Marx would make an inventory and appraisal of the personal property, exclusive of the china, belonging to the estate. Marx made a detailed inventory and appraisal of the personal property belonging to the estate. The total appraisal value was $5,380.50. The appellant testified that the attorney for the executors told her that Marx would inventory and appraise the china collection for her without cost and suggested that she have it done, to which she consented. The attorney testified that he did not recall this *489 conversation, but the appellant’s statement is not otherwise questioned. Marx did make a separate detailed inventory and appraisal of the china collection, and the total appraised value thereof was $10,302.
In the transfer tax depositions the executors, in the schedule of other miscellaneous property, set out the following item: “ Furnishings, personal effects and miscellaneous non-income producing personality as per appraisal of Samuel Marx, Inc., hereto annexed, marked Exhibit ‘ B,’ $15,682.50.” The Exhibit B annexed to the deposition was the Marx appraisal of personal property, exclusive of the china collection, amounting to $5,380.50. No inventory of or reference to the china collection is found in the papers on file in the office of the Surrogate’s clerk.
In the proceeding for the final judicial settlement of the accounts of the executors the account as originally filed did not contain any statement relative to The Hut or the personal property therein, but in a supplemental affidavit the following item is listed as property received by the executors as principal: “ Beal Property known as The Hut parcel * * * together with the personal property therein contained as appraised and inventoried, $25,384.50.” The amount had been reduced by $98 to correct a conceded error. Both executors signed the affidavit at the end of the account and both verified it. Below the signature of the appellant executor and above the signature of the executor, Julian Seaman, were written in long hand these words: “ Without prejudice to Estate’s ownership of china collection.” It is not clear from the record who wrote these words, but the appellant testified that they were written at the time of the execution of the affidavit, and that her claim of ownership of the china was under discussion at that time. The decree settled the account as filed and directed the executors to turn over to Olive Brown Seaman “ the property devised and bequeathed to her for the term of her life,” without specifying in any way the identity of such property. In the intermediate account of the trustees, filed after the death of Julian Seaman, this same item was set out in substantially the same language and at the same amount.
The appellant left the details of the business of administering the estate to her attorneys. They prepared all the papers. She looked them over and executed them at their direction, and there was nothing in any of these papers to indicate that the china was listed as an asset of the estate. She repeatedly asserted her ownership and protested when it was first suggested that the value of the china made up part of the disputed item.
*490 The contention that the china was included as an asset of the estate in any of the previous proceedings is supported only by a deduction based on sheer speculation. That the value of the china was added to the inventory, and to the value of the real estate to make the total of $25,584.50 seems likely. But this could have come about through the error of some clerk in the attorney’s office engaged in working on the transfer tax appraisal affidavit who thought both of the Marx appraisals pertained to assets of the estate and put both totals in the summary. Many theories could be advanced, but the most reasonable conclusion is that it was the result of somebody’s early error which was copied in succeeding accounts. The statement, “ Without prejudice to the Estate’s ownership of china collection,” written above the signature of Julian Seaman, was an admission by that executor that the china collection was not included in the account as an asset of the estate, and that he did not want that fact to jeopardize the right of the estate to later assert a claim if it so desired.
Matters embraced in a decree and in the account on which such decree is based include only those matters which are clearly and specifically set out and which can be definitely ascertained from a reading of the account and decree. Matters not thus set out cannot be written in by deduction based on speculation. The ownership of the china in question was not a matter which was embraced in any of the previous proceedings, and the appellant is not estopped from asserting such ownership now.
The evidence produced upon the trial is sufficient to establish the appellant’s claim to the ownership of the china collection. Without commentating at length upon the evidence, it is sufficient to point out that it was established that the appellant had personally collected the china in question, starting when she was a child; that the collection was substantially completed by about 1909; that in 1910 the testator executed and delivered to the appellant a writing which read as follows:
“ Private Office
Frank Seaman
34 West 33rd Street
New York
For one dollar & other valuable consideration I hereby assign to Mrs. Olive Brown Sarre any & all interest I may have in the old china now at Yama-no-TJchi, Napanoch, N. Y. & hope when she has done with it she will give it to my son Julian.
Frank Seaman
N. Y. Jun 2-1910 ”.
*491 That in 1910, the appellant and the testator had not yet married, and her name was Sarre; that'during his lifetime the testator acknowledged on one or more occasions that the china belonged to the appellant. There was no evidence offered on behalf of the respondents. On the trial the appellant produced the 1910 assignment on demand of the respondents, who had it marked as an exhibit. She was then allowed on cross-examination to testify over objection as to the signature of the testator, the delivery of the writing and the remarks of the testator at the time of the delivery. The respondents claim that the appellant was not competent to give this testimony under section 347 of the Civil Practice Act. Even assuming this to be true, the document was properly put in evidence on the independent testimony of two competent witnesses who established the signature of the testator. The appellant is entitled to findings of fact in conformity with the foregoing, and such findings are so made. The appellant is entitled to a decree determining that she is the absolute owner of the china collection.
The Surrogate correctly construed article first of the second codicil insofar as he held that it created a legal life estate in Olive Brown Seaman in the real estate devised and in such personal property as was owned by the testator and located in The Hut at the time of his death, and that it created an absolute vested remainder in Philip Seaman in such property, to take effect in possession at the termination of the life estate. He was in error in holding that any interest in said china collection passed under said codicil, or that the title or ownership of such collection was in any way affected thereby, and the decree insofar .as it so provides, should be reversed.
The respondents contend that the appellant is barred from claiming ownership of the china by the Statute of Limitations, asserting that under section 209 of the Surrogate’s Court Act, the statute begins to run against an executor from the first judicial settlement of his account as to any debt due him from the decedent, or cause of action in his favor against the estate. This contention is untenable. The appellant was the absolute owKier of this china and it was in her possession. She was under no duty to take any proceeding or action at law to establish her rights. If the estate claimed an interest in this property it was mcumbent on the estate to institute proceedings, not upon the appellant. As a matter of fact, this proceeding was instituted by the representatives of the estate, who requested in their petition a construction of the codicil and a determination of the ownership of the china. The appellant is defending her title *492 to the china. .If the statute has run against anybody, it has run against the estate.
The decree and findings should be reversed and modified as . indicated herein, and the matter remitted to the Surrogate’s Court to enter a decree in accordance with this opinion, with costs to the appellant.
Foster, P. J., Heffernan, Brewster and Deyo, JJ., concur.
Decree reversed on the law and the facts, with costs to the appellant and the matter remitted to the Surrogate’s Court to enter a decree in accordance with this decision.
The findings of the Surrogate that the china collection is a part of the estate of the decedent, that the will of the decedent created a life estate therein in the appellant with remainder in Philip Seaman and that the appellant is estopped from claiming title thereto, are reversed. /
This court finds that the appellant Olive Brown Seaman is the absolute owner of said china collection and that the estate of the decedent has no interest therein, and that the will has no application thereto.
Motion to dismiss appeal denied, with $10 costs.