[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 207 
This action was brought to recover the damages arising from a breach by the defendant of a contract made by it on April 5, 1876, with Gill Mansfield for the construction of an elevator. The complaint alleges as a breach that the defendants failed to have the foundations ready for the erection of the elevator, at the time notice was served upon them and they were required to commence work for its construction, and claim damages therefor by reason of increased expense in doing the work and supplying materials, and loss of gain or profits, arising from the delay occasioned by the want of readiness on the part of the owners. Upon the trial all proof on the part of the plaintiff tending to show the cause of action set out in the complaint, with the damages arising therefrom, was objected to by the defendant and excluded by the court under the plaintiff's exception.
The decision of the court seems to have been based upon the assumption that there was no covenant on the part of the defendant to have the foundations ready at the time of giving notice thereof, and such seems to have been the opinion of the General Term in affirming the judgment.
An examination of the terms of the contract is necessary to determine the correctness of the views taken by the court below. That instrument provided, among other things, that Gill 
Mansfield should furnish the materials and perform the work in erecting the superstructure of an elevator, over the water, upon piers in the Hudson river between Sixtieth and Sixty-first streets in New York, and should finish the same within five months from the time of the commencement of the work, and should receive as their compensation therefor the sum of $331,500, and the further sum of $500 per day for each day less than that time occupied in its construction. It was further provided that they should pay the defendant as *Page 210 
liquidated damages the sum of $500 per day for each day in excess of that time, during which the completion of the work should be prolonged.
With respect to the time of the commencement of the work it was provided: "The said parties of the first part hereby further agree to commence the erection of the elevator within five days after notice from the engineer that the foundations are ready and to complete the same ready for the use of all the lofting elevators within five months thereafter." "Whenever the word `engineer' is used in the specifications reference is had to the engineer-in-chief in charge of the work for the party of the second part, to this contract."
It seems to us that the courts below have mistaken the plain reading and import of this contract. It is true that there is no express provision in it requiring the foundations, or any part of them to be ready at any particular time. So neither is there any such provision requiring any foundations at all to be built by the owners; but the clearest implication arises from the language of the agreement, and its avowed object and intent, that the property of the owners upon which the building was to be erected, should be prepared for the superstructure by such owners, and that the contractors should have notice whenever that time arrived. It was the indispensable condition to the performance of any of the obligations incurred by the contractors that the foundations should be prepared, and unless they were to be so prepared, it rendered the whole contract motiveless and nugatory.
It is not denied by the respondent but that the duty of preparing the foundations was assumed by it, but it is urged that there is no provision in the contract requiring it to have all of the foundations, or any particular portion of them, ready at the time of giving the notice of readiness stipulated for in the agreement. In this we think it is mistaken.
It was made the duty of the owner not only to prepare the foundations for the reception of the work of the contractors, but also to notify them, through their agent, of the fact of such readiness. The terms of the contract plainly imply that the *Page 211 
notice was to be of an actually existing condition, and not the expression of an opinion on the part of the engineer that the foundations were sufficiently advanced to enable the contractors to prosecute their work advantageously. The contractors have not submitted any such question to the decision either of the owners or their engineer, and in view of the heavy obligations assumed by them it would have been unwise and hazardous to have done so. There is no rule of construction or principle of law which will justify a party who is required by contract to give notice to another of the existence of a fact upon which important obligations depend, to do so untruly, or in such a manner as to prejudice the contractual rights and privileges of the party entitled to notice. It was held by this court in the case ofPeck v. Collins (70 N.Y. 376), that notice of readiness to perform implies readiness on the part of the party giving such notice, and if he was not in fact ready, neglect to perform on the part of the other party constitutes no default. It is a well-settled principle of law in the construction of contracts that when the obligation of performance by one party presupposes the doing of some act on the part of the other prior thereto, that the neglect or refusal to perform such act not only dispenses with the obligation of performance by the other, but also entitles him to rescind, or when rescission will not afford him an adequate remedy, to continue the work and recover such damages as the delinquency has occasioned, against the defaulting party. (Cross v. Beard, 26 N.Y. 85, 88.)
The meaning of a contract is to be gathered from a consideration of all of its provisions, and the inferences naturally derivable therefrom, as to the intent and object of the parties in making it, and the result which they intended to accomplish by its performance. It was said by ALLEN, J., inBooth v. Cleveland Mill Co. (74 N.Y. 15, 21): "There is no particular formula of words or technical phraseology necessary to the creation of an express obligation to do or forbear to do a particular thing or perform a specified act. If from the text of an agreement and the language of the parties, either in the body of the instrument or in the recital or references, there is *Page 212 
manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for non-performance, of which an action of covenant or assumpsit
will lie." It was said by Judge DANFORTH in New England IronCo. v. Gilbert Elevated R.R. Co. (91 N.Y. 153, 165), that "although the defendant does not in express terms undertake to do the act, or give the notice which shall set the plaintiff in motion, a promise to do so" "is clearly to be implied from the covenants and stipulations which were inserted." "There is manifested a clear intention on the part of the defendant to construct the railway, and for that purpose to do certain things, among others, raise the money, provide the masonry and give instructions to the plaintiff. These things, and others, on the part of the defendant, the plaintiff by the contract acquired an interest in having performed, and there is an obligation for their performance to be implied in its favor." The language used in these authorities is peculiarly applicable to the case in hand, and furnishes a safe and just guide by which to determine their rights.
Looking at this contract in the light of decisions referred to, it would seem that the plainest principles of justice require the implication, of a covenant, on the part of the defendant to prepare the foundations in question so as to have them in a condition to enable the contractors to prosecute their work to the utmost advantage and economy, before giving the notice which set the time limited for their completion in motion. Any other construction would destroy the mutuality of the agreement, and put it practically in the power of one party to defeat performance by the other.
It is quite obvious that the provisions of the contract in respect to time are of its essence, and were regarded by the parties as of primary importance, the contractors being stimulated to great diligence by the prospect of extraordinary compensation therefor, and deterred by the certainty of great pecuniary loss from dilatoriness or delay in the prosecution of their work. A construction which enabled the *Page 213 
railroad company to retard the prosecution of the work by the contractors, or disabled them from employing all of the agencies or force which in their judgment could wisely and advantageously be used in its performance, would operate as a fraud upon them and render their covenant to complete the work in five months, a reckless and foolhardy undertaking. The very assumption of such a covenant on the part of the builders implies an understanding by all parties that they were to be unrestricted in the employment of means to perform it, and that nothing which it was the duty of the owner to do to enable the contractor to perform, should be left undone. It is unreasonable to suppose that the parties intended to enter into obligations, providing for the performance of work by one party under a heavy penalty for non-performance within a given period, which yet left it optional with the other to facilitate or retard such work at its pleasure or discretion.
It is also claimed by the respondent that the act of the contractor in commencing the work within five days after receipt of the notice in question constituted a waiver of the breach complained of.
The evidence establishes the fact that, immediately upon receipt of the notice, the contractors protested against it, and claimed that it was given in violation of the true meaning and spirit of the contract, and that the foundations were not only not ready, but were in such a condition that they could not commence or prosecute their work, except at increased expense and great disadvantage. Under the solicitations of the engineer, however, as they offered to prove, and without waiving any rights secured to them under the contract, they in fact commenced the prosecution of the work. There is nothing in the facts upon which an intention to waive the damages arising out of the breach complained of can be predicated. When the breach occurred, the contractors undoubtedly had the option of refusing to commence their work until the foundations were actually ready, or to commence and prosecute it, relying upon the covenants of their contract *Page 214 
to recover such damages as the breach occasioned them. (Starbird v. Barrons, 38 N.Y. 230, 231; Ruff v. Rinaldo,
55 id. 664; Cross v. Beard, supra.) After express notice to the defendants of their intention to hold them liable for the damages arising from the omission to complete the foundations they elected to commence the prosecution of the work. This they were entitled to do, and it constitutes no waiver of their claim.
The further objection is taken that no valid assignment of the claim in suit, was made by his copartner in the work, to the plaintiff. The objection that Gill was a necessary party to the action is not taken by the answer, and assuming that the assignment was invalid, it does not constitute a bar to the action because the plaintiff still had such an interest in the contract as entitled him to maintain an action for his damages thereon. Independent, however, of this objection, we are of the opinion that the assignment in question was sufficient in itself, or so ambiguous on its face as to authorize parol evidence to explain its meaning. The instrument in question purported to assign to the plaintiff all of Gill's right, title and interest to any and all claims and demands which the late firm of Gill 
Mansfield have had or now have against the New York Central and Hudson River Railroad Company, "for, on account of and arising from any and all award or awards due said firm from said company, under a certain contract for the erection of a grain elevator, at the foot of Sixtieth street in said city, by reason of said Gill Mansfield having completed the construction of said elevator within a certain time specified in said contract, the said Luther E. Mansfield hereby agreeing that all prosecutions of all claims shall be in his name individually."
It is manifest from the language of the instrument, that the parties intended to transfer some claim then in existence, arising under the contract in question, and that such claim required prosecution by action in order to enable the assignee to enjoy the benefit of the assignment. The only doubt as to the meaning of the contract arises from the use of the words "award or awards therein." Neither the contract nor the evidence shows that any awards were contemplated by the contract, or that *Page 215 
any had been or could be made thereunder, and in the absence of explanation as to the application of such words, there does not appear any subject-matter for the assignment to operate upon.
It is a familiar rule that parol proof of extrinsic circumstances may be given to apply a description to its subject-matter, and that if it appears that the description is in some parts erroneous, those parts may be rejected, and what is left, if sufficient of itself, alone be regarded. (Fish v.Hubbard, 21 Wend. 651; Burr v. Broadway Ins. Co., 16 N.Y. 267; Field v. Munson, 47 id. 221; Gardner v. Heyer, 2 Paige, 11.)
Upon the trial the plaintiff gave in evidence a judgment-roll in an action in the Supreme Court, wherein he was plaintiff and the said Gill was defendant, instituted to procure a reformation of the language of the said assignment, so as to make it conform to the real intentions of the parties when it was made, and also an assignment executed by Gill in conformity to such judgment, transferring to the plaintiff all causes of action growing out of the contract between Gill Mansfield and the defendant. This judgment was rendered after the commencement of the present action and after one trial thereof had been had. The defendant objected to the evidence.
We think the evidence was competent. As we have seen, it was proper for the plaintiff to give parol evidence of the meaning of the language used in the assignment, and a judgment against Gill, the only party except the plaintiff who had an interest in the matter, determining that fact, was the highest evidence that could have been given upon the issue. The only interest that the defendant here, had in that question, was to be protected from any claim under the contract by other parties. This judgment bound the parties to it and effectually protected the defendant from any claim which could be made by Gill. It establishes the rights of the plaintiff in the subject of the action as they existed at the time of its commencement, and did not in any respect change his relation with the plaintiff.
We have been invited by the appellant to express our opinion upon the question of the damages recoverable in this action, *Page 216 
but we do not think that question is before us in such a shape as to authorize an opinion thereon.
The judgments of the courts below should be reversed and a new trial ordered, with costs to abide the event.
All concur.
Judgments reversed.