### DADY v. O'ROURKE.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

1. CONTRACTS—CONSTRUCTION.

Plaintiff, who owned 33 shares less than three-fifths of the stock of a company, contracted to convey all his right in the property and assets of the company, including the stock held by him, amounting to three-fifths of the entire capital stock, for a certain sum, to be paid on or before a certain time, on which payment he agreed to assign in blank his stock in the company and procure the resignation of its officers, depositing the resignations and the stock in escrow to be delivered on payment of the agreed sum. *Held*, that plaintiff did not bind himself to convey three-fifths of the entire capital stock; the statement of the amount of his stock holdings not being controlling, but rendered nugatory by agreement to assign "his stock."

2. SAME—PAROL EVIDENCE—ADMISSIBILITY.

A latent ambiguity being created when it was shown that plaintiff held and owned less than three-fifths of the stock, parol evidence was properly admitted to show that an assignment of all the stock owned or held by plaintiff was all that the parties intended.

3. SAME—BREACH—RESCISSION—CONDITION PRECEDENT.

An agreement by plaintiff that on consummation of the sale there should be no debts or liens against the property except two mortgages, and that he would sell all his right to certain dock property for a certain sum, does not make the payment of the debts and liens or the execution and delivery of the deed conditions precedent to a claim for payment of the sum agreed on for his interest in the company, or essential to a right to rescind; such provision being designed to create a liability for damages.

4. SAME—TAXES—WAIVER.

Where plaintiff, in contracting to convey his interest in a company, agreed that on consummation of the contract there would be no debts or liens on the company except two mortgages, defendant in an action to rescind the contract cannot object because taxes and assessments, which were all the claims, debts, or liens against the property, were not paid, since, by agreeing to continue a proceeding then pending to set them aside, he waived their immediate payment.

5. SAME—DEEDS—VALIDITY—REVENUE STAMPS.

Where plaintiff, in contracting to convey his interest in a company, also agreed to sell his interest in certain dock property, in an action to rescind the contract for failure to perform the fact that the deed of such dock property had no revenue stamps does not show failure to perform on plaintiff's part, the deed being otherwise sufficient to convey plaintiff's interest, since the revenue stamps were not essential to its validity.

6. SAME—PAYMENT—DEFAULT.

Where plaintiff, who contracted to convey his interest in a company, including stock, the stock to be delivered in escrow to a certain company on payment of a certain amount on or before a certain day, performed his part of the contract, defendant, after depositing the amount agreed

on with the escrow, by refusing to allow payment of it to plaintiff rendered the whole contract nugatory, entitling plaintiff to rescind, and recover the stock deposited by him, payment being an indispensable condition to performance by plaintiff and a continuance of the contract.

Appeal from special term, Kings county.

Action by Michael J. Dady against John H. O'Rourke, impleaded with the Hamilton Trust Company, to recover stock deposited. From a judgment in favor of plaintiff, defendant O'Rourke appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

William Rand, Jr., for appellant.
James C. Church, for respondent.

SEWELL, J. The Gravesend Hygienic Ice Company was organized on the 22d day of June, 1896, by the plaintiff, John A. Cook, William G. Pierson, S. S. Williamson, and the defendant O'Rourke, with a capital stock of $120,000, divided into 1,200 shares of the par value of $100 each. O'Rourke acquired the interest of Cook before any stock was issued. Each of the other incorporators named or suggested two or more of his friends or employés, and eleven certificates of five shares each were, on July 23, 1896, issued, to enable them to become directors. Subsequently the plaintiff purchased Williamson's interest in the company. When the remaining 1,145 shares were divided, 458 shares were issued to the plaintiff, the same number to the defendant O'Rourke, and a certificate for 228 shares was issued to the trustees of Pierson's estate. The plaintiff purchased the Pierson interest or stock, and caused 40 shares to be issued to certain persons, to be held for his benefit. On the 30th day of October, 1899, the plaintiff made an agreement in writing, which provided that, in consideration of the sum of one dollar, in hand paid, the plaintiff gave to the defendant O'Rourke an option to purchase all his right, title, and interest in the property and assets of the Gravesend Hygienic Ice Company, "including the stock now held by me, either in my name or in the name of any person or persons for my benefit, said stock holdings amounting to three-fifths of the entire capital stock of said company, for the sum of $30,000.00, to be paid on or before the 1st day of December, 1899, on which day this option shall expire in default of payment being made." Upon the payment of said $30,000 on or before the 1st day of December, 1899, the plaintiff agreed to make assignment in blank of his stock in said ice company, to procure the resignation of the officers and trustees, and to deposit the stock and resignation with the defendant the Hamilton Trust Company in escrow, to be delivered to said O'Rourke upon the payment by him of $30,000. The plaintiff further agreed that there were no claims, debts, or liens against the property of the ice company except two mortgages, and upon the consummation of the sale thereby contemplated there should be no liens or debts except said mortgages. The plaintiff further agreed to sell all his right, title, and interest to the dock property at the foot of Twenty-Second street

for the sum of $1,500. O'Rourke deposited the sum of $31,500 with the defendant the Hamilton Trust Company on the 28th day of November. The plaintiff thereupon procured and delivered to O'Rourke the resignation of the officers and directors, and deposited with the defendant the Hamilton Trust Company 687 shares of stock and the deed of the dock property. It appeared in evidence that seven of the stock certificates issued to qualify directors were about the same time surrendered or delivered to the defendant O'Rourke, and at his request new certificates were issued to other persons. The plaintiff testified that he did not name or suggest either of the four directors who refused or neglected to deliver their stock to the defendant, and that he was not, and never had been, in any manner interested in the stock held by them. The defendants, in their answer, admit that the plaintiff demanded the $30,000 deposited, and that the trust company refused to pay over the money by direction of O'Rourke. They also admit that the plaintiff elected to avoid the agreement, and that the trust company refused to return the stock, though requested by the plaintiff so to do.

The defendants claim that the true construction of the agreement required the plaintiff to assign and deposit three-fifths of 1,200 shares, the entire capital stock of the company, and that the learned trial court misconstrued the obligation of the plaintiff in finding that he had performed the conditions of the agreement on his part. If this obligation rested upon the plaintiff, we could not say that the court found that he failed to comply with it. The appellant obtained from some one all the stock he claims to have contracted for, and the court may have found that the 35 shares of directors' stock surrendered to O'Rourke were delivered and accepted in pursuance of the agreement or option, and that the plaintiff was entitled to be credited therewith as well as the 687 shares deposited. There is ample evidence in the record to support such a conclusion, but it is not at all necessary to sustain the judgment. If the contract is construed solely by its own language, it is manifest that the plaintiff did not intend to bind himself to assign three-fifths of the entire capital stock of the company. The subject-matter is declared to be the plaintiff's right, title, and interest in the property and assets of the company, including the stock then held and owned by him. The agreement in the instrument is "to make assignment in blank of my stock in said Gravesend Hygienic Ice Company"; and it cannot be doubted that, had the plaintiff intended to assign three-fifths of the entire capital stock,—33 shares more than he then held and owned,—he would not have limited his obligation to the assignment of the particular stock then held and owned by him. The plaintiff has not, in express terms, agreed to assign three-fifths of the stock of the company; his right to demand payment was not made to depend upon the condition; and, taking into consideration the entire description, we think that the statement of the amount of plaintiff's stock holdings is not controlling, but, on the contrary, is rendered nugatory by the explicit description immediately preceding it. No other construction can be placed upon the description to make out the quantity which the

plaintiff owned, and obviously intended to assign. But, if such be not its proper construction, and standing alone, the statement of the amount is an essential or material part of the description, as the defendants contend a latent ambiguity was created when it was shown that the plaintiff held and owned less than three-fifths of the stock, which was explainable by parol proof, without infringing upon the rule that a written contract cannot be added to, varied, or reformed by evidence of negotiations which precede or conversations which accompanied the making of it. It is a familiar rule that parol proof of extrinsic circumstances may be given to apply a description to its subject-matter. Thus parol evidence may be admitted where it appears from extrinsic facts that there are two persons, or objects, or modes of performance, corresponding to the terms of the contract; and, if it appears that the description is in some parts erroneous, those parts may be rejected, and what is left, if sufficient of itself, alone regarded. Mansfield v. Railroad. Co., 102 N. Y. 205, 6 N. E. 386; Field v. Munson, 47 N. Y. 221; Burr v. Insurance Co., 16 N. Y. 267; Am. & Eng. Enc. Law (2d Ed.) 303. The extrinsic evidence introduced in this case shows conclusively that the plaintiff assigned and deposited, or delivered to the appellant personally, all the stock held or owned by him, and that this was all the stock the appellant sought to acquire, or the plaintiff intended to assign. We think that the reasonable construction of the agreement, and one which gives force and effect to the intention of the parties, is that which made it possible for the plaintiff to comply with its provisions.

The appellant also contends that the plaintiff is in default for having failed to deposit the resignation of the officers and directors; that there were, and still are, claims and liens against the property; that the deed of the dock property is not in due form, and did not have upon it the revenue stamps required by law. We are of the opinion that there is nothing in the terms or character of the agreement which made the payment of the debts and liens or the execution and delivery of the deed a condition precedent to a claim for payment, or essential to the cause of action alleged in the complaint. These provisions seem to have been designed to create a liability rather than a condition precedent. The answer, however, admits that the plaintiff procured for the defendant O'Rourke the resignation of the officers and directors of the company, and thereafter said defendant elected new directors and officers of his own choosing, and entered into the control and management of the affairs and business of the corporation. The evidence given by the plaintiff establishes the fact that the defendant O'Rourke waived the immediate payment of the taxes and assessments, which were all the claims, debts, or liens against the property of the company, by an agreement to continue a proceeding then pending to set them aside. It may also be remarked that the deed was sufficient to convey and release all the right, title, and interest of the plaintiff in and to the dock property, and that revenue stamps were not essential to its validity. People v. Gates, 43 N. Y. 40; Moore v. Moore, 47 N. Y. 467, 7 Am. Rep. 466.

We are of the opinion that the trial judge was correct in his interpretation of the contract, and that his finding that the plaintiff was not in default is supported by the evidence. It is obvious that the provisions of the contract or option in respect to him are of its essence, and were so understood and regarded by the parties to it. Payment or deposit in the trust company, for the use and benefit of the plaintiff, on a certain day, was an indispensable condition to performance by the plaintiff and to the continuance of the contract; and, when the defendants refused to perform that condition, the whole contract was rendered nugatory, the plaintiff was entitled to rescind, and to a return of the stock deposited by him.

The judgment should therefore be affirmed, with costs. All concur.