(60 App. Div. 583.)

## GABLER v. McCHESNEY. (No. 1.)

(Supreme Court, Appellate Division, Fourth Department. April 30, 1901.)

1. BILLS OF LADING—ACCEPTANCE BY CONSIGNEE—DEMURRAGE—ESTOPPEL.

Where the master of a canal boat presents bills of lading to the consignees which contain an agreement to pay demurrage, and the latter accept the cargo with knowledge of the contents of such bills, they will be estopped from denying a claim for demurrage on the ground that the goods were shipped under a different contract, not allowing demurrage.

2. SAME—DELAY IN UNLOADING VESSEL.

Where a contract of shipment requires the canal boat to be brought to the dock of the consignee, and requires the payment of a certain sum per day as demurrage on the failure of the consignee to unload within three days, the removal of the boat from the consignee's dock within the three days by the public authorities, caused by the temporary closing of the canal, will prevent a recovery of demurrage for the time the boat is prevented from returning to the dock.

Appeal from special term, Oneida county.

The plaintiff is a canal boat man, and the owner of two canal boats, called the "John Mahar" and the "Craig & Crouch." The defendant is a lumber dealer doing business at the city of Syracuse, N. Y. In the summer of 1897 the defendant purchased a large quantity of yellow pine lumber from the Hilton-Dodge Lumber Company of New York, which by the terms of the purchase was to be delivered alongside of the defendant's dock upon the Erie Canal, in the city of Syracuse. On the 20th day of November of that year the Hilton-Dodge Company made a contract in writing with the Syracuse & New York Canal Line, by W. B. Walsh, assuming to act as its agent, to transport a portion of the lumber purchased by the defendant, consisting of 105,000 feet, at $1.60 per thousand feet. This contract, which was executed in duplicate, and which is designated in the record as "Exhibit A," recited that the lumber had been received on board the boats Craig & Crouch and

John Mahar, in apparent good order; that it was to be carried by the Syracuse & New York Canal Line, by its own or other means of transportation, and forwarded to the defendant, alongside of his dock, at the rate of $1.60 per 1,000 feet. One copy was delivered to the consignor, and by it sent to the defendant, at Syracuse, N. Y., without the knowledge of the plaintiff. On the same day, Walsh, as agent, executed two other instruments in writing (Exhibits B and C), which were in the nature of bills of lading, one of which was for the boat John Mahar, and provided for the transportation of 50,000 feet of pine lumber from the consignor's dock in New York to the consignee's dock in Syracuse; and the other was of like character, save that it related to the boat Craig & Crouch, and provided for the transportation of 55,000 feet of lumber. Each of these two instruments or bills of lading was executed in duplicate by the consignor, by Walsh, assuming to act as its agent, and by the plaintiff; one of them being delivered to the plaintiff and retained by him. The material portion of these instruments reads as follows:

"* * * Shipped," etc. "* * * Captain G. L. Gabler; * * * the captain agreeing to tow day and night, and deliver same without unnecessary delay to the consignee at the place of destination in like good order. * * * Consignee to be allowed three legal working days, of twenty-four hours each, to discharge this cargo, and for all other time, Sundays and legal holidays excepted, until such cargo is discharged, is to pay demurrage at the rate of five dollars per day. * * *"

On the same day, Walsh, still assuming to act as agent, executed and sent to the defendant, by mail, without the plaintiff's knowledge, another instrument in writing (Exhibit D), which was in all respects similar to Exhibits B and C, except that it embraced the entire shipment of lumber by plaintiff's boats, and provided that the demurrage should be at the rate of five dollars a day for both boats, instead of five dollars a day for each.

The plaintiff's boats left New York on the day these instruments bear date, and arrived at the defendant's dock in Syracuse late on the afternoon of November 30, 1897. The defendant was notified by the plaintiff of the arrival of his boats the day following (December 1st), at which time the defendant was engaged in unloading other boats containing portions of the lumber purchased in New York, and which had arrived at his dock in advance of the plaintiff's boats. Prior to the arrival of the plaintiff's boats at Syracuse, due public notice had been given by the superintendent of public works of the state of New York that the canals would be officially closed at 12 o'clock. noon, on the 1st day of December; and the same official had also issued a circular to owners of boats, notifying them at what points along the canal they might tie up their boats during the time navigation was closed, but the defendant's dock in Syracuse was not one of the points thus designated. In accordance with such notice, the Erie Canal was closed on the 1st day of December, but the water in the Syracuse Level was not drawn off until some time after the 4th day of the month. On the day last mentioned, and before any attempt had been made to unload the plaintiff's boats, they were, without the consent of either of the parties, removed from the defendant's dock, by the order of the superintendent of public works, to a point about two miles distant, where they and the lumber thereon were permitted to remain until the opening of the canal in 1898. The number of days intervening between the arrival of the plaintiff's boats at the defendant's dock and the 10th day of January, 1898, when this action was commenced, was 40, of which number 6 were Sundays and 2 legal holidays, and the number of days for which demurrage was claimed was consequently 29.

The facts as above stated were stipulated by the parties, and upon such facts it was found by the trial justice that the plaintiff was entitled to demurrage for 29 days at the rate of $10 per day, amounting in the aggregate to $290. For this amount, together with interest and costs, judgment was subsequently entered, and from such judgment this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

F. B. Gill, for appellant.

James B. Jenkins, for respondent.

ADAMS, P. J.  The only questions discussed by counsel, and consequently the only ones to be reviewed upon this appeal, are: First, was there a contract binding the defendant to pay demurrage?  And, second, did the action of the state authorities in removing the plaintiff's boats from the defendant's dock relieve the defendant from the obligation to pay demurrage after such removal, provided any contract to pay the same ever existed?

It is insisted by the appellant's counsel that the contract under which the lumber in question was forwarded to the defendant was embraced in Exhibit A, and that, inasmuch as that contract is altogether silent upon the subject of demurrage, no foundation is furnished for the plaintiff's claim.  In submitting this contention, however, it is conceded by the learned counsel for the appellant that if the instruments which were subsequently issued, and which are designated in the record as Exhibits B and C, embraced the contract between the parties, the defendant is liable to pay demurrage at the rate of five dollars per day for each of the plaintiff's boats, while, upon the other hand, it is claimed that if the instrument finally executed, and designated as Exhibit D, correctly sets forth the contract, he is liable to pay demurrage, but at the rate of only five dollars a day for both boats.  Precisely why these different instruments or bills of lading should have been made out and executed as they were, is not satisfactorily explained.  Nevertheless, it does appear that upon the morning of the arrival of his boats at Syracuse the plaintiff personally notified the defendant of their arrival, and at the same time delivered to him Exhibits B and C, which the defendant received, and, after comparing them with the duplicates which he had theretofore received from the consignor, informed the plaintiff that he would unload the boats as soon as he could.  In these circumstances, it is immaterial whether or not these particular exhibits were, strictly speaking, the actual bills of lading under which the lumber was transported.  They purported to be such, and they certainly were contracts of some nature, which not only recited the terms of affreightment, but also contained a stipulation for demurrage after the expiration of three days allowed for unloading; and by accepting the lumber, with knowledge of the contents of these instruments, the defendant, within well-settled rules, recognized them as binding contracts, which defined the rights and liabilities of the several parties thereto, and he cannot now be heard to say they are not, in force and effect, what they purport to be.  Van Etten v. Newton, 134 N. Y. 143, 31 N. E. 334; Germania Fire Ins. Co. v. Memphis & C. R. Co., 72 N. Y. 90; Am. & Eng. Enc. Law (2d Ed.) p. 228.  Adopting this view, as we feel constrained to do, it follows that these were contracts by the terms of which the defendant was liable to pay such demurrage as was therein specified, provided it is made to appear that the plaintiff performed his part of the contracts, and that the defendant, in unloading the boats, consumed a longer time than that specified therein.

As regards the second proposition, it is urged by the defendant that inasmuch as it was the vis major of the state, without the consent of either the plaintiff or the defendant, which prevented the

latter from unloading his lumber until the opening of navigation
in the spring of 1898, the contracts were suspended during the in-
tervening time, and that the defendant was consequently excused
for their nonperformance. This contention is one which we should
be inclined to favor, if the contracts in question contained no stipu-
lation as to demurrage. Scholl v. Steel Co., 101 N. Y. 602, 5 N. E.
782. But the rule has long obtained that where, as in this case,
there is an express provision for demurrage, parties must be held
strictly to the terms of their contract, and that, in general, no ex-
cuse is available for any delay, from whatsoever cause arising, which
is not stipulated in the contract. Cross v. Beard, 26 N. Y. 85.
However, in the view which we take of the case, it is not necessary·
to discuss this feature of it, or to definitely pass upon the correct-
ness of the defendant's contention; for, even if wholly untenable,
we are yet of the opinion that for another reason the contracts
were suspended, and that in consequence thereof the plaintiff is not
entitled to recover. A contract of demurrage is a legal contract,
and one which must be construed and determined upon strict legal
principles. This being so, it becomes important to examine a little
more carefully into the terms of the contract upon which the plain-
tiff rests his claim. By reference thereto it will be seen that the
lumber transported by the plaintiff's boats was to be delivered to
the defendant "alongside" of his dock at the city of Syracuse. And
this, as found by the trial court, was one of the requirements of
the contract. Undoubtedly, the plaintiff himself so understood it;
for he does not claim to have been in readiness for unloading until
his boats were at the defendant's dock. This dock, therefore, was
the place where the contract was to be finally consummated. It
was where the lumber was to be unloaded, and where the plaintiff's
right to demurrage was to accrue, if at all. The defendant could
not, under the contracts, have required the plaintiff to unload his
boats at some distant dock; nor could the plaintiff have compelled
the defendant to accept his lumber at any other place than that
specified in the contracts. When, therefore, the plaintiff's boats
were removed from the defendant's dock, in consequence of which
the latter was required to accept his lumber at a point about two
miles distant therefrom, we think he had the right to treat the con-
tracts as suspended, and to regard his obligation to pay demurrage
thereunder as terminated; for it is a principle of law too well set-
tled to admit of discussion that in the construction of contracts,
where it appears that the obligation of performance by one party
is to be preceded by the doing of some particular act or the per-
formance of some particular duty by the other, neglect, refusal, or
omission to do such act or perform such duty dispenses with the
obligation of performance by the former. Mansfield v. Railroad
Co., 102 N. Y. 205, 6 N. E. 386. Within this principle, it was in-
cumbent upon the plaintiff to deliver his cargoes at the place speci-
fied in the contracts; and, as he did not do so or offer to do this
at any time after the expiration of the three-days limit, we fail
to see upon what theory he can maintain this action. 9 Am. & Eng.
Enc. Law (2d Ed.) p. 248.

It follows, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.

F. B. Gill, for appellant.
James B. Jenkins, for respondent.

ADAMS, P. J. This action arose out of the same transactions referred to in a former action between the same parties (action No. 1), and the stipulated facts are substantially the same, with this exception: The plaintiff's boats remained at the point where they were taken by the superintendent of public works until the open-ing of navigation in the spring of 1898, when they were returned to the defendant's dock. They reached the dock on the 9th day of May, and were unloaded before noon on the 14th day of that month. In the meantime, and upon the 12th day of May, there was a break in the Erie Canal; and navigation was, in consequence thereof, sus-pended until the 24th day of May, upon which date the boats left the defendant's dock. The present action was commenced on the 20th day of June, 1898, and judgment was demanded for demurrage amounting to the sum of $800. The trial court refused to allow any portion of this demand for demurrage accruing prior to the 9th day of May, when the boats were returned to the defendant's dock, and as to such refusal no exception is taken by the plaintiff. But demurrage was allowed at the rate of $5 per day for each boat from the 9th until the 24th day of May, the day the break in the canal was repaired. As already stated, the unloading of the boats was completed on the 14th day of May, at which time the defendant's liability for demurrage under the contracts terminated, and what-ever detention occurred subsequent to that date was the result of a cause for which the defendant was in no wise responsible. Had there been sufficient water in the Syracuse level to have floated the plaintiff's boats on the 15th day of May, it is reasonable to assume