Judgment of the Municipal Court affirmed, with costs.

---

Joshua W. Barnum, Respondent, v. John T. Williams, Appellant. (Action No. 1.)

Second Department, November 21, 1906.

Contract to erect iron work — delay caused by owner — when contractor entitled to recover although work interrupted by strike.

Correspondence relating to a building contract is merged in a subsequent formal contract, and when such correspondence indicates the time within which the contractor was entitled to have the building in condition to install his work, it is material only on that question.

When the owner fails to furnish plans of the work, so as to enable the contractor to perform within the time set, the contractor is justified in abandoning the contract and may recover on a *quantum meruit* for the work done up to that time.

When the failure of the contractor to complete the work by the time set is due to a default of the owner, the contractor may, without notice, complete the work and recover the additional expense made necessary by the delay.

Although, when a definite time of performance is fixed and no delay is caused by the owner, a default by the contractor is not excused by a strike of his employees, yet when the work is delayed by the owner for a period beyond that necessary to have completed the work, the reasonable time within which the contractor may complete the work does not include the time when he was unable to proceed by reason of a strike of all competent workmen in that line of construction.

Appeal by the defendant, John T. Williams, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of

the clerk of the county of Nassau on the 14th day of January, 1905, upon the report of a referee.

*Richard T. Greene*, for the appellant.

*John J. Kuhn* [*William N. Dykman* with him on the brief], for the respondent.

Judgment affirmed, with costs, on the opinion of the referee.

HIRSCHBERG, P. J., HOOKER, GAYNOR, RICH and MILLER, JJ., concurred.

The following is the opinion of CHARLES H. OTIS, Esq., referee:

OTIS, Referee:

On the 11th day of January, 1902, the plaintiff's assignor, Hecla Iron Works, wrote a letter to the defendant, John T. Williams, making a bid for the fabrication and erection of certain light and ornamental ironwork, offering, for the sum of $18,810, to furnish material and perform the labor to complete certain work, as shown by the drawings of the defendant on his premises in William street, known as the Lord's Court Building.

On the 21st day of January, 1902, Hecla Iron Works wrote a second letter to the defendant, in which it stated that it would agree to complete its work in from five to six weeks' time should it be awarded the contract; and would further agree to have all the material ready for the new stories to be put in place as fast as the steel frame was in place to receive it; and could proceed with the work of the lower stories at once, and could start the setting of the same in two weeks' time and complete as above stated.

The propositions embodied in these two letters were accepted by the defendant by his letter of January twenty-third.

The work in question involved the ornamental work required for four additional stories which the defendant was adding to Lord's Court Building. There was also the iron work for three elevators extending from the ground floor to the new roof, and certain other smaller items which it is needless to mention.

Hecla Iron Works proceeded immediately upon the receipt of the letter of January twenty-third from the defendant with the fabrica-

tion of the stairs for the additional five stories, which was the only part of the work upon which it could enter until it had received plans from the defendant. The Hecla Iron Works was able to proceed with this portion of the work, for the reason that it had constructed the stairs for the original building and had in its possession the necessary data to enable it to proceed at once with the drawings and fabrication of these stairs. They were completed and put in storage on March 3, 1902.

On February twentieth a formal contract was entered into between the parties, embodying these general features, and fixing April 1, 1902, as the time within which the work to be performed by Hecla Iron Works should be completed. As a matter of fact, beyond the construction of the stairs for the additional stories, Hecla Iron Works was not able to do anything whatever towards the performance of its contract until after the date fixed in the contract for its completion, April first, by reason of delays occasioned by the defendant.

From time to time drawings were sent forward by the defendant to Hecla Iron Works for various parts of the construction.

On April eleventh, ten days after the time when the contract was by its terms to have been completed, the defendant sent a revised plan for the general layout of the elevator beams, framing and partitions. The final plans necessary for the construction called for by the contract were not sent to the Hecla Iron Works until June 24, 1902. It is in evidence and undisputed that Hecla Iron Works would have been able to complete its contract by April first, the time mentioned in the contract, had the necessary work in the building and the reception of the plans by the Hecla Iron Works been sufficiently prompt and sufficiently far advanced to enable Hecla Iron Works to proceed with its work, and it is certain that all such work could have been completed by Hecla Iron Works long prior to July seventh, the date of the strike hereinafter referred to.

I am of opinion that all prior correspondence between Hecla Iron Works and the defendant was merged in the contract which was signed February twentieth, and regard the letters prior to the signing of the contract as material to this issue only as indicating the time within which Hecla Iron Works had the right to receive the necessary information and to have the building sufficiently far

advanced to enable it to proceed without delay with its work in order to comply with the date fixed in the contract, which was undoubtedly framed in relation to the prior correspondence upon the subject.

The Hecla Iron Works, in every particular, had proceeded with its work with the utmost diligence, and for several months substantially all of the material required to complete the work had been in storage in the storehouse of Hecla Iron Works, and could have been set in a very short time, provided the building had been ready to receive it. This work, especially the elevator fronts, is of a character which cannot be set in the building until all the other contractors are practically out of it. In order to set it properly, the building must be what is termed " broom clean," although Hecla Iron Works had done a part of this work in advance of that condition and assumed the risk of the consequences. Substantially all the material required for the building had been fabricated, and practically all of such material had been actually delivered at the premises before July seventh, and on that day, when the building was first ready to receive them and when work could first be done in the matter of erecting the stairs, the stairs were sent to the building, but not delivered, because prevented by a strike of the employees of the Hecla Iron Works, which was called at noon of that day.

At this point in the history of the transaction we find the Hecla Iron Works ready, willing and anxious to do all the work called for by the contract. We find that up to that date they had followed closely the other contractors, and sometimes anticipated them in the due order of their work, and there is no evidence that there was any moment during the period from January twenty-third until July seventh when there was any work on the building which could have been done by the Hecla Iron Works which was not done promptly.

On July seventh all of the employees of the Hecla Iron Works struck work on this building upon some alleged or pretended grievance that the defendant had failed to pay some other contractor some amount alleged to be due to him. These employees were members of Local No. 2 Bridge and Structural Iron Workers of America. All *competent* outside employees in the line of work of the Hecla Iron Works were members of this organization. Only

Second Department, November, 1906. [Vol. 115.

the building in question was struck, and doubtless the true reason for the strike was a means to enable one Sam Parks, a delegate of this organization, to extort sums either from the owner of the building or from the Hecla Iron Works. Certainly the strike was not called for any alleged or pretended grievance against Hecla Iron Works. No other work then in process by Hecla Iron Works was struck by the members of this organization. During the period of the strike it was impossible for the Hecla Iron Works to procure any competent men with whom to complete the building, as is evidenced by the later efforts on the part of the defendant to complete the building himself.

Later, on October twenty-fourth, by some arrangement between the defendant and Hecla Iron Works, the stairs which had been fabricated since about March fifth were delivered to the defendant

Pausing here for a moment, let us see what the rights of the respective parties to the agreement were at this point. Without reference to the strike, I am of the opinion that by reason of the delays occasioned Hecla Iron Works by the defendant, Hecla Iron Works would have been entirely justified in abandoning the contract at this point, and would have been entitled to recover from the defendant the value of all material and labor furnished by it to Lord's Court Building up to that time on the basis of *quantum meruit*. The defendant insists that by reason of the strike, Hecla Iron Works did abandon its contract at that point, and if that be the true theory I am of opinion that Hecla Iron Works is entitled to recover as above stated. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Empire Transportation Co.* v. *Phila. & R. Coal & Iron Co.*, 77 Fed. Rep. 919; *Geismer* v. *L. S. & M. S. R. Co.*, 102 N. Y. 563.)

But whatever the contention of the defendant in this regard may be, it is not the fact that Hecla Iron Works did abandon the contract at that time as distinguished from abandoning the work.

It was the desire and intention of Hecla Iron Works to complete this contract at the earliest practicable moment, but it had not been able to do so on October 6, 1902.

On July ninth, two days after the strike was called, the defendant wrote a letter to the Hecla Iron Works, in which he notified it under the 4th clause of the contract that he elected to terminate the

contract, and that he would proceed under that clause to complete the work and charge the expense of such completion to Hecla Iron Works. This notice was evidently waived and withdrawn, as the parties were negotiating together long after that period in a joint effort to secure the completion of the work, but on October sixth a second notice was sent to Hecla Iron Works under the same 4th clause, to the effect that the defendant elected to terminate the contract, and would proceed to complete the iron work and charge the expense of such completion to Hecla Iron Works. The defendant thereupon endeavored to secure the completion of this work, and experts in the same line of business called by the defendant testified that during that period, and while this strike was pending, it would have been impossible to secure competent workmen to complete the job, as all competent workmen were members of the order mentioned, and would have refused to work. The defendant, thereupon, after exhausting, without success, all the ordinary and usual methods of procuring such work to be done, finally entered into a contract with one John Elliott to furnish labor at one dollar per hour, both shop and on the building, and to furnish such labor as he could manage to get, but whom he would not guarantee to be competent workmen. The defendant proceeded in this wise, working nights and at enormous expense, as the price was not only high, but the inexperience and inefficiency of the laborers were correspondingly expensive in time. This work was finally completed some time about January, 1903. The total expense incurred by the defendant in its performance, and which he seeks to charge against the plaintiff, amounts to $8,241.54. It may be that there are some items included in this amount which the defendants would not be entitled to recover under any circumstances, but this becomes immaterial in view of the conclusion which I have reached.

I am of opinion that the plaintiff's general contention in this action should prevail :

*First.* As I have already stated, if the circumstances be so construed as to constitute an abandonment by the Hecla Iron Works on July 7, 1902, it was entitled to recover on the basis of *quantum meruit* to that date. (*Simmons* v. *Ocean Causeway*, 21 App. Div. 30, 35 ; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205.)

Second Department, November, 1906.                    [Vol. 115.

*Second.* It appears by the evidence of the defendant's witnesses that the amount paid by the defendant to complete the job — $8,241.54 — was the lowest possible amount for which they could have procured the work to be done. The law is well settled in this State that where a contract fixes a time within which the work shall be completed, and the work contracted for is not completed at the time stated by reason of delays occasioned directly by the owner, the contractor may without notice complete the work to be done, and may recover from the defendant the entire additional expense of completion occasioned by such delays. (*Allamon* v. *Mayor, etc., of Albany,* 43 Barb. 33; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205.)

The defendant claims that that amount is $8,241.54. If such claim be well founded, this amount represents the sum which the plaintiff would have been entitled to recover in this action for that part of the work so performed by the defendant in case the plaintiff's assignor had continued to the completion of the work in the same manner as it was performed by the defendant himself. It is conceded that the work was improperly performed and not in such a manner as would have been accepted by the defendant from the Hecla Iron Works if it had completed the work in the same manner, and yet it was the best result which the defendant was able to secure under the conditions then existing.

*Third.* Hecla Iron Works was excused from the completion of its contract by the strike.

If a contractor is delayed in the completion of his contract by the fault of the owner, his time to complete is thus extended for a reasonable time. (*Dannat* v. *Fuller,* 120 N. Y. 554.)

It has been held that a reasonable time does not include any period, long or short, during which he is unable to proceed by reason of a strike. This of course would not be true if a definite time for completion had been fixed in the contract and the contracting party had not been delayed in any way by the owner. In such case the strike of his employees would not constitute an excuse, but, as in this case, where the contracting party has been delayed by the owner for a period far beyond that necessary to complete and far beyond the time within which he could easily have completed except for such delays, the result is different, and if he continues

the contract at all and does not rescind the contract for such reason, then the reasonable time within which he is allowed by law to complete does not include the period of time within which it is utterly impossible for him, as in this case, to proceed. While this case is not on all fours with the cases hereafter cited, I think that it falls within the reason and general principles laid down in those cases. (*Geismer* v. *L. S. & M. S. R. Co.*, 102 N. Y. 563; *Happel* v. *Marasco*, 37 Misc. Rep. 314.)

I have not overlooked the case of *Blackstock* v. *N. Y. & Erie R. R. Co.* (20 N. Y. 48), but am of opinion that the principles laid down in the *Geismer* and the *Empire Transportation Co.* cases (*supra*) are controlling under the facts of this case. All of the employees of Hecla Iron Works were members of the organization Local No. 2, Bridge and Structural Iron Workers of America, and all competent workmen in this class of work were members of the same organization; so that the Hecla Iron Works was quite as effectually prevented from proceeding with its work as though prevented by acts of mobs and violence.