SAMUEL BESKIN, Claimant, *v.* STATE OF NEW YORK, Defendant.

Court of Claims, August, 1922.

Claims against state — contract to repair highway — delay caused by fault of the state — not necessary for contractor to give notice before completing work — when rise in price of labor and materials because of war conditions entitles contractor to damages.

Where a contract for the repair of a highway is made with the state and the failure of the contractor to complete the work by the time set is due to the fault of the state, the contractor may without notice complete the work and recover the amount of additional expense made necessary by such delay.

After the state had in July, 1917, made a contract with claimant to resurface with a top and bottom course a macadam highway, the work to be completed on November 15, 1917, it was discovered by the state that the work could not go

14

on until a sub-base had been placed on the highway and that if a top and bottom course was laid ·on the roadway as it then existed it would be useless. The contractor was ordered by officials of the state in charge to stop the work until the state had put on a sub-base below the top and bottom courses as a foundation. There was nothing in the contract requiring claimant to wait or give him any notice that a sub-base would be required. The time for the completion of the contract was extended to August, 1918, by mutual consent of the parties but when claimant in the spring of that year was ready to proceed with the work the state compelled him to wait until a sub-base was placed upon the highway as a result of which the work called for by the contract was not finished until August 2, 1919. *Held,* that as the highway was one of the main thoroughfares used by the federal government for the transportation of its munitions of war by large trucks and was used for that purpose, the state when it made the contract should have known that a sub-base was absolutely necessary before the top and bottom course called for by the contract could have been placed upon the highway.

The necessity of placing the sub-base upon the highway was the cause of the delay, and the price of labor and materials having in the meantime gone up because of existing war conditions plaintiff was compelled to pay more than he would had he not been delayed in the performance of his contract. *Held,* that claimant was entitled to an award for the damages sustained because of the delay which was clearly caused through the fault and neglect of the state and not through any fault of the claimant.

CLAIM for damages caused by delaying completion of highway contract.

*James G. Meyer,* for claimant.

*Charles D. Newton, Attorney-General (Edward M. Brown,* of counsel), for defendant.

*Per Curiam.* The above-entitled claim was heard by Charles Morschauser, one of the judges of this court, and the case was submitted to the court for decision. Judge Morschauser's term as a judge of this court expired before the decision was actually made. Before leaving the court, however, he wrote an opinion in this case. The court now adopts that opinion. It is in the following language:

" The claimant filed a claim alleging that he had a contract with the state for the repair of the Livingston-Hudson, Part I, State Highway, and the Livingston-Hudson, Part II, State Highway, No. 5073, under contract No. 1117. The contract called for the repair with bituminous macadam by the penetration method of a total length of three and sixty-seven hundredths (3.67) miles in the county of Columbia, the claimant to furnish all the materials, labor and tools to complete such repair work.

" The claimant asserted that he was delayed by the state in the completion of his contract and sustained damages thereby in the sum of $4,231.49. On the trial the claimant asked leave to amend

his claim by alleging that the damages sustained because of such delay, which was caused by the state, amounted to the sum of $5,193.73. No objection to the allowance of such amendment was made by the state and the amendment was allowed.

" The state in its defense claims that any delay that the claimant suffered was by reason of his own neglect and delay, and, therefore, the state is not liable. The contract was made on the 11th day of July, 1917, and according to its terms the claimant was to proceed within ten days thereafter. The contract was to resurface with a top and bottom course the highway in question. The highway in question had been a macadam road built by the state but did not have any sub-base. The terms of the contract required its completion by the contractor on or about the 15th day of November, 1917. After the letting of the contract it was discovered by the state that the work as designed and contracted for could not go on for the reason that the top and bottom course, required under the claimant's contract, could not be placed upon this highway until a sub-base had been placed thereon, making the same a substantial roadway, and it was found that if a top and bottom course was laid on the roadway as it then existed it would be useless. The claimant under his contract was to place on this highway only a top and bottom course and he was in no way under his contract to furnish or construct a sub-base. The war conditions were such at that time that the claimant could not transport his plant, machinery and tools to begin work on this contract and as the state had made a contract which the contractor could not perform until the sub-base had been placed on the highway both the state and the claimant entered into a mutual contract at claimant's request whereby the completion of the contract was extended to August, 1918. The effect of this extension of the date of the completion of the contract was in effect the same as though the original contract had required the claimant to complete the same by August, 1918.

" The claimant in the spring of 1918 had his plant, tools, machinery and men and materials on the ground at the location where he was to do the work ready to proceed with the work required of him under his contract with the state. He was ordered by officials of the state in charge of the work to stop work on his contract until the state had put on this highway a sub-base, which was to be built below the top and bottom course as a foundation for the top and bottom course. The state and the claimant attempted to agree upon a price for which claimant would do the work of placing upon this highway a sub-base but they could not agree upon the price and thereupon the claimant turned over to

the state his entire plant which he had there at that time permitting the state to use the same for the purpose of placing upon this highway a sub-base which was necessary before the claimant could go on with his contract.

"The state took over claimant's plant and proceeded with the work for about a week when the claimant and the state entered into a contract whereby the claimant was to construct this sub-base, and thereupon the claimant proceeded to construct the sub-base. The claimant had before that time offered to do the work at a price cheaper than the state could do it and after the state had attempted to use claimant's plant it found that the price offered by the claimant was cheaper and it would be an advantage to the state to allow the claimant to proceed with the work. The claimant thereupon constructed the sub-base under a new contract with the state.

"The state in the spring of 1918 when the claimant was ready with his plant to do the work under his original contract to construct a top and bottom course refused to allow the claimant to go on with his contract until the sub-base had been constructed. The state when it made its original contract for a top and bottom course with the claimant required him to proceed at once knowing that a sub-base would be necessary before the claimant could proceed with his work, and thereafter objected to the claimant proceeding under his original contract and ordered him to stop work until the sub-base had been laid.

"The claimant then proceeded to lay the sub-base and after the completion of the sub-base proceeded to perform his original contract of placing a top and bottom course on this highway. This work of placing a top and bottom course upon the highway was finished August 2, 1919.

"It appeared by the evidence that if the claimant had not been interfered with he could have finished his original contract and had the highway resurfaced with a top and bottom course before August 15, 1918, the time and date under his contract for the completion of the contract to resurface the top and bottom course of this highway, under the extension mutually agreed upon between the state and the claimant. By reason of the delay, which was caused by the state, the claimant was delayed one hundred and thirty-six days with the result that he could not commence the work under his original contract until after the sub-base was laid. After the completion of the construction of the sub-base he commenced work under his original contract but was prevented from completing it by reason of weather conditions, the winter coming on, and he did not finish it until 1919, although he com-

menced the work in 1918. If the claimant had not been compelled to put in a sub-base, or to wait until the state did so, he had sufficient men, materials, tools and machinery and could have resurfaced this highway and completed the work called for under his original contract by August, 1918.

" The state when it made the original contract with the claimant should have known that a sub-base was necessary before the claimant could proceed with his contract. This highway was one of the main thoroughfares used by the government for the transportation of its munitions of war by large trucks and was used for that purpose and a sub-base was absolutely necessary before the top and bottom course could be placed upon this highway.

" The error or mistake on the part of the state in letting the contract for a top and bottom course to the claimant when there was no sub-base was in no way attributable to the claimant and the necessity of placing this sub-base upon the highway was the cause of the delay.

" The state when it made the contract could have easily discovered the fact that there was no sub-base and must have known that a sub-base would have to be placed upon the highway before the claimant could proceed under his contract. There was nothing in the contract between the state and the claimant requiring the claimant to wait or give him any notice that a sub-base would be required.

" By reason of the war and existing conditions the price of material and labor increased so that the claimant was compelled to pay a much larger sum for materials and labor at the time he completed his contract than he would have been compelled to do had he been permitted to complete his contract within the time agreed upon between the state and the claimant. The claimant by reason of this fact was damaged in the sum of $5,193.73. The engineers of the claimant and the engineers of the state agreed that this was the amount of damages sustained by reason of the increased cost of labor and materials and the state on the trial conceded that the damage suffered by the claimant caused by the delay on account of the increased cost of labor and materials was this amount.

" Where the failure of a contractor to complete the work by the time set is due to a default of the owner, the contractor may, without notice, complete the work and recover the additional expense made necessary by the delay. *Barnum* v. *Williams,* 115 App. Div. 694; affd., 190 N. Y. 539; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; 114 id. 331.

" In a recent case decided in this court, after the state had made a contract with the claimant and the state informed the claimant that the macadam base for the asphalt was not sufficient, and when the state and the claimant could not agree upon a price for making it sufficient and the state cancelled part of the contract and virtually destroyed the contract the claimant had entered into, whereby the state by its order removed from the contract most, if not all, of the work on which the claimant could make any profit which it claimed it had a right to do under the terms of the contract, it was held by Judge Ackerson that there was no reason why the state could not have fully understood what it was doing when it made the contract with claimant to place asphalt on this old macadam. Judge Ackerson in his opinion very clearly pointed out what the rights of the parties are under the circumstances and said:

" ' When it determined (meaning the state) that such macadam base was insufficient, it seems to us that it must have done one of three things, viz:

" ' (1) Permitted claimant to make it sufficient under a supplemental contract;

" ' (2) Performed such work itself or by an independent contractor;

" ' (3) Cancelled the contract and thereby became liable to claimant for its damages.' See *Langan Construction Corp.* v. *State of New York,* 110 Misc. Rep. 177.

" It seems to us that the loss sustained by the claimant (the amount is not disputed and is conceded by the state) was clearly caused through the fault and neglect of the state and not through any fault of the claimant. The state made a contract for the resurfacing of a highway and the contractor had nothing to do with the condition of the highway. His contract simply called for the placing of a top and bottom course on this highway. The state when it made the contract knew that there was no sub-base on this highway and also must have known that it would require a sub-base before the top and bottom course could be laid. No information of this was given the contractor and the contractor was given a certain time within which to complete his contract. When the state found that a sub-base was necessary and the contractor found that he could not transport his plant because the conditions of transportation were such that it was impossible for him to do so they mutually agreed to extend the time of the completion of the contract to August, 1918. When the contractor in the spring of 1918 was ready with his plant to proceed with the contract, the state because of its omission to have a sub-base, or

MATTER OF JACOB G. SCHMIDLAPP.   **215**

Misc. 215]      Surrogate's Court, New York County, August, 1922.

make provision for it, prevented the contractor from going on with the work so that he could complete it that season but compelled the contractor to wait until a sub-base was placed upon this highway. This compelled the contractor to carry his original contract before the completion thereof from that season until the following season. In the meantime because of the price of labor and materials having gone up, and by reason of this fact, the contractor was compelled to pay more than he would have been compelled to pay if he had not been delayed in his original contract, and he suffered a loss of $5,193.73.

" Therefore, we think, the claimant should receive an award of $5,193.73."

Present, ACKERSON, P. J., and WEBB, J.

Ordered accordingly. _____